2 F.3d 1112
 62 Fair Empl.Prac.Cas. 1484,
62 Empl. Prac. Dec. P 42,554, 2 A.D. Cases 1270,
3 ADD 320
 Walter FITZPATRICK, Wayne E. Hall, William J. Hutchinson,
Thomas Jones, Darryl J. Levette, Miguelito Marcelli, Andre
D. Mitchell, Dennis Bernard Thomas, Melvin Whitehead,
Gregory Wilkinson, Alfonzo L. Williams, and Elton M. Worthy,
Plaintiffs-Appellants,
v.
CITY OF ATLANTA, Defendant-Appellee.
 No. 92-8306.
 United States Court of Appeals, Eleventh Circuit.
 Sept. 27, 1993.
 
 Michael Weinstock, Weinstock & Scavo, Atlanta, GA, for plaintiffs-appellants.
 Miguelito Marcelli, pro se.
 Overtis Hicks Brantley, City of Atlanta Law Dept., Atlanta, GA, for defendant-appellee.
 Paul Bogas, EEOC, Washington, DC, Rosalind A. Rubens, Willie Jake Lovett, Jr., Atlanta, GA, for amicus EEOC.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and ANDERSON, Circuit Judges, and RONEY, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This suit was brought against the City of Atlanta ("the City") by several African-American firefighters employed by the Atlanta Department of Public Safety, Bureau of Fire Services ("the Fire Department") who suffer from a medical condition on account of which they cannot shave their faces. Plaintiffs challenge a fire department regulation that requires all firefighters to be clean-shaven. They allege (1) that this "no-beard" rule has a discriminatory disparate impact on African-Americans in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e et seq.; (2) that the no-beard rule was adopted for racially discriminatory reasons in violation of Title VII; (3) that the rule discriminates against the handicapped in violation of Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a); and (4) that the rule infringes the firefighters' constitutional right to substantive due process of law.[1] The City defends the policy, contending that the respirator masks used by firefighters cannot safely be worn by bearded men. The district court granted summary judgment for the City and the firefighters have appealed. For the reasons set forth below, we affirm the judgment of the district court.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 In order to breathe in smoke-filled environments, firefighters must wear respirators, otherwise known as positive pressure self-contained breathing apparatuses ("SCBA's"). For the SCBA mask to operate properly and safely, its edges must be able to seal securely to the wearer's face. The parties do not dispute that a wearer's long facial hair can interfere with the forming of a proper seal. In an attempt to address the hazard posed by such hair, the City Fire Department until 1982 enforced a policy requiring all male firefighters to be completely clean-shaven. See Bureau of Fire Services Standard Operating Procedure 88.9.
 
 
 3
 The twelve plaintiff-appellant firefighters in this case are all African-American men who suffer from pseudofolliculitis barbae ("PFB"), a bacterial disorder which causes men's faces to become infected if they shave them. It is generally recognized that PFB disproportionately afflicts African-American men. At least one of the appellants, firefighter Darryl Levette, has been fighting with the City over its no-beard policy for more than ten years. Levette first challenged the requirement in 1982. In response to his complaints, the City modified its policy in order to accommodate firefighters with PFB. See Bureau of Fire Services Standard Operating Procedure 82.5 (R-31-Exhib. 1, Attach. B).
 
 
 4
 Under the modified policy, firefighters with PFB were permitted to participate in a program known as the "shaving clinic." Shaving clinic participants were allowed to wear very short "shadow" beards, which were not to exceed length limits specified by a dermatologist employed by the City. To enforce these limits, the Fire Department subjected the participating firefighters to a series of periodic beard inspections. It was believed that so long as the shadow beards were kept very short, the SCBA masks would still be able to seal sufficiently well to enable the firefighters to use them safely.
 
 
 5
 In 1988, after one of the appellant firefighters, William Hutchinson, complained that he had been wrongly refused permission to participate in the shaving clinic, the City decided to reconsider the shadow beard policy. On the recommendation of Del Corbin, the City's then-Assistant Commissioner of Public Safety, the Fire Department decided that shadow beards would no longer be permitted, on the grounds that even shadow beards may interfere with the safe use of SCBA's.
 
 
 6
 On November 4, 1988, the Department of Public Safety issued Special Order 3.9, directing the Fire Department to resume enforcement of Bureau of Fire Services Standard Operating Procedure 88.9, the no-beard rule. Under the new policy, firefighters who cannot be clean-shaven must be removed from firefighting duty. Such persons may be transferred to non-firefighting positions within the Department, if suitable openings are available. They may also apply for other available positions with the City but are accorded no special priority and must compete on an equal basis with other eligible candidates. Under the new policy such persons are granted the right to be temporarily reassigned from firefighting duties for a one-time period of ninety days. Dep't of Pub. Safety, Special Order 3.9 (R-33-Exhib. A). Male firefighters who cannot shave and for whom non-firefighting positions are not available within the Department are terminated, once they have exhausted their ninety days of temporary reassignment.
 
 
 7
 Firefighter Hutchinson challenged the new policy by filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 14, 1988. In March 1989, the EEOC certified the charge as a "class" charge on behalf of all city firefighters adversely affected by the policy change. Magistrate's Report (R-43-2-3). The appellant firefighters initiated this suit on December 29, 1989. The district court issued and then extended a restraining order prohibiting the City from changing the terms or conditions of the plaintiff firefighters' employment during the pendency of the litigation before the district court. (R-3; R-42). The City has kept the appellant firefighters on the payroll and has permitted them to continue reporting for work at their regular fire stations, but it has required them to perform various janitorial duties instead of their regular jobs. Magistrate's Report (R-43-2-5).
 
 
 8
 The City answered the complaint and moved for summary judgment. The district court referred that motion to a magistrate judge and on November 18, 1991, adopted the magistrate's recommendation that the motion be granted. District Court Order (R-53), adopting Magistrate's Report (R-43). This appeal followed.
 
 II. SUMMARY JUDGMENT STANDARD
 A. Introduction
 
 9
 Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks and citations omitted).
 
 
 10
 In Adickes v. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court instructed the federal courts to employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment. The operation of this framework was modified significantly in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The current framework is set out below.
 
 B. Movant's Initial Burden
 
 11
 The movant's initial burden consists of a "responsibility [to] inform[ ] the ... court of the basis for its motion and [to] identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. at 2553. The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.
 
 
 12
 1. For Issues on Which Movant Would Bear Burden of Proof at Trial
 
 
 13
 As interpreted by this court sitting en banc, Celotex requires that for issues on which the movant would bear the burden of proof at trial,
 
 
 14
 that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.
 
 
 15
 Four Parcels, 941 F.2d at 1438 (citations and internal quotation marks omitted; emphasis in original).
 
 
 16
 2. For Issues on Which Non-Movant Would Bear Burden of Proof at Trial
 
 
 17
 For issues, however, on which the non-movant would bear the burden of proof at trial,
 
 
 18
 the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show[ ]--that is, point[ ] out to the district court--that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.
 
 
 19
 Four Parcels, 941 F.2d at 1437-38 (citations, footnote, and internal quotation marks omitted; emphasis in original).[2]
 
 
 20
 C. Non-Movant's Responsibility Once Movant Satisfies Initial Burden
 
 
 21
 If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. Coats & Clark, 929 F.2d at 608. If, however, the movant carries the initial summary judgment burden in one of the ways discussed above, responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact.[3]
 
 
 22
 1. For Issues on Which Movant Would Bear Burden of Proof at Trial
 
 
 23
 For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact. Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial--that is, such that no reasonable jury could find for the non-movant--should the movant be permitted to prevail without a full trial on the issues. Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511.
 
 
 24
 2. For Issues on Which Non-Movant Would Bear Burden of Proof at Trial
 
 
 25
 For issues on which the non-movant would bear the burden of proof at trial, the means of rebuttal available to the non-movant vary depending on whether the movant put on evidence affirmatively negating the material fact or instead demonstrated an absence of evidence on the issue. Where the movant did the former, then the non-movant must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated. Where the movant did the latter, the non-movant must respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Celotex, 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. See Melissa L. Nelkin, One Step Forward, Two Steps Back: Summary Judgment After Celotex, 40 Hastings L.J. 53, 82-83 (1988).
 
 III. STANDARD OF APPELLATE REVIEW
 
 26
 The court of appeals reviews grants of summary judgment de novo, applying the same legal standard employed by the district court in the first instance. Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir.1990). When reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied. Davis v. Liberty Mutual Ins. Co., 525 F.2d 1204, 1207 (5th Cir.1976)[4]; 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil Sec. 2716, at 658 (1983).
 
 IV. DISCUSSION OF ISSUES ON APPEAL
 
 27
 The district court granted summary judgment for the City on each of the firefighters' four claims. On appeal the firefighters challenge those rulings. As explained below, we affirm the judgment of the district court on all four claims.
 
 A. Title VII Disparate Impact Claim
 1. Elements of Claim
 
 28
 Title VII of the Civil Rights Act of 1964 prohibits employers covered by the statute from taking actions or engaging in practices that discriminate against workers or job applicants on the basis of their race, color, religion, sex, or national origin. 42 U.S.C. Sec. 2000e-2. This ban on employment discrimination extends, not just to actions taken or practices instituted for discriminatory reasons, but also to otherwise nondiscriminatory actions or practices that have discriminatory effects. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). In order to establish Title VII liability under this effects-based definition of discrimination, a plaintiff must first demonstrate that a challenged employment action or practice has a disproportionate adverse impact on a category of persons protected by the statute. Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726-27, 53 L.Ed.2d 786 (1977). Once such a prima facie case has been made out, the defendant must show that the challenged action is demonstrably necessary to meeting a goal of a sort that, as a matter of law, qualifies as an important business goal for Title VII purposes.
 
 
 29
 The Supreme Court held in Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), that the defendant's burden on the "business necessity" defense is only one of production; under Wards Cove the burden of persuasion remains at all times with the plaintiff. Id. at 659, 109 S.Ct. at 2126. Congress, however, statutorily reversed this ruling in the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, which amended Title VII to provide that, once a plaintiff makes out a prima facie case, the full burden of proof shifts to the defendant who must demonstrate business necessity in order to avoid liability. Id. Sec. 105(a), 105 Stat. at 1074-75 (codified at 42 U.S.C. Secs. 2000e-2(k)(1)(A)).[5] In this case the district court entered summary judgment on November 21, 1991, one day before the President signed the 1991 Civil Rights Act into law. We shall assume arguendo that the burden allocation set out in the new statute applies retroactively to this case, for we conclude that defendant is entitled to summary judgment even under the 1991 Civil Rights Act standard--that is, the standard most favorable for plaintiffs. See infra Part IV.A.3.
 
 
 30
 Upon a showing of "business necessity," the challenged action or practice is deemed justifiable, its regrettable discriminatory effects notwithstanding. However, even after such a showing, the plaintiff may still overcome a proffered business necessity defense by demonstrating that there exist alternative policies with lesser discriminatory effects that would be comparably as effective at serving the employer's identified business needs. Upon such a showing, Title VII liability is established. Dothard, 433 U.S. at 329, 97 S.Ct. at 2727.
 
 
 31
 2. Grounds for Summary Judgment Urged by the City
 
 
 32
 The City moved for summary judgment on the Title VII disparate impact claim, contending that it was entitled to prevail for two separate reasons. First, the City argued that the firefighters had failed to adduce statistics of the sort required under Title VII doctrine to show that PFB indeed afflicts African-Americans disproportionately and that, consequently, the firefighters had failed to show that the no-beard rule disproportionately excludes African-American men from firefighting jobs. Thus, the City claimed that the firefighters had failed even to create a genuine issue as to whether--let alone to prove as a fact that--the rule has a disparate racial impact. If it were in fact true that the firefighters lacked the evidence necessary to prove at trial that there is a disproportionate incidence of PFB among blacks, then the City would indeed be entitled to summary judgment, for where a Title VII disparate impact plaintiff fails to make out a prima facie case, the defendant is entitled to prevail. Frazier v. Garrison Indep. Sch. Dist., 980 F.2d 1514, 1525 (5th Cir.1993).
 
 
 33
 Second, the City proffered an affirmative "business necessity" defense, asserting that the ban on shadow beards is necessary to meeting the goal of ensuring worker safety. Contending that ensuring worker safety constitutes an important business goal for Title VII purposes, and that there was no genuine issue that the no-beard rule was necessary to meeting that goal, the City maintained that it was therefore entitled to summary judgment. See City's Memo in Support of Summary Judgment Motion (R-31-6-8); City's Reply Memo in Support of Summary Judgment Motion (R-39-2-3).
 
 3. Propriety of Summary Judgment
 
 34
 The district court granted summary judgment in favor of the City on the ground that there was an absence of evidence showing that the no-beard rule has a disparate impact. See Magistrates's Report (R-43-7-13). We, however, find it unnecessary to address that issue on appeal. Exercising our discretion to affirm grants of summary judgment on any adequate alternative ground fairly presented in the record, we uphold the court's order regarding the firefighters' Title VII disparate impact claim on the ground that appellants have failed to create a genuine issue as to the City's contention that the ban on shadow beards is necessitated by safety concerns.
 
 
 35
 In ruling on this ground, we assume arguendo that the firefighters have adequately alleged a prima facie case of disparate impact. Where a Title VII disparate impact challenge is mounted against a practice or action which admittedly causes a disparate impact, the defendant is entitled to prevail if (1) the defendant shows that the practice or action is necessary to meeting a goal that, as a matter of law, qualifies as an important business goal for Title VII purposes, and (2) the plaintiff fails to show the availability of less discriminatory alternative practice or action that would provide a comparably effective means of meeting that goal. Thus, in order for such a defendant to be entitled to summary judgment, the following must be true: (1) there must be no genuine issue that the practice or action is required to meet a goal that, as a matter of law, qualifies as an important business goal under Title VII; and (2) there must be no genuine issue with respect to the existence of a comparably effective less discriminatory alternative.
 
 
 36
 a. Business Necessity Defense
 
 
 37
 The City defends its decision to ban shadow beards on the ground that the prohibition is required to protect the firefighters from health and safety risks. If true, these safety claims would afford the City an affirmative defense, for protecting employees from workplace hazards is a goal that, as a matter of law, has been found to qualify as an important business goal for Title VII purposes. Hayes v. Shelby Memorial Hosp., 726 F.2d 1543, 1552 n. 14 (11th Cir.1984); New York City Transit Auth. v. Beazer, 440 U.S. 568, 587 & n. 31, 99 S.Ct. 1355, 1366 & n. 31, 59 L.Ed.2d 587 (1979); Dothard, 433 U.S. at 331 n. 14, 97 S.Ct. at 2728 n. 14.[6] But cf. International Union, U.A.W. v. Johnson Controls, 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (employer desire to guard against birth defects in employees' potential offspring does not constitute bona fide occupational qualification justifying facially discriminatory employment policy). Measures demonstrably necessary to meeting the goal of ensuring worker safety are therefore deemed to be "required by business necessity" under Title VII.
 
 
 38
 Whether the no-beard rule is demonstrably necessary to meeting the acknowledged business goal of worker safety is a factual issue on which, for the purposes of this case, we have assumed that the City, the movant, would bear the burden of proof at trial. See supra Part IV.A.1. Thus, our analysis of whether there exists a genuine issue as to this material fact begins with an examination of whether the City has carried the initial burden imposed on parties moving for judgment on issues on which they would bear the burden of proof at trial. See discussion supra Part II.B.1. The City has supported its safety allegations with evidence in the form of an affidavit from an expert in the field of occupational safety and health and with a citation to a U.S. Occupational Safety and Health Administration ("OSHA") regulation concerning use of respirators by persons with facial hair. See City's Memo in Support of Summary Judgment Motion (R-31-6, 8) (citing R-31-Exhib. 2, and 29 C.F.R. Sec. 1910.134(e)(5)(i)).
 
 
 39
 The City's expert, Kevin Downes, swore that, "Based upon my research and experience in training on the proper use of SCBA's, it is my opinion that the SCBA should not be worn with any amount of facial hair that contacts the sealing surface of the face piece." Affidavit of Kevin Downes (R-31-Exhib. 2-p 5). In the affidavit Downes detailed particular safety risks that he maintained were posed by use of SCBA's by men with facial hair. Such use would be dangerous, asserted Downes, because facial hair is likely to interfere with the forming of a proper seal between the SCBA mask and the wearer's face. An imperfect seal may permit air from the outside environment to leak into the mask--when this occurs the wearer is said to have "overbreathed"--thereby risking exposing the wearer to contaminants. Id. at p 7.[7]
 
 
 40
 As support for his opinion, Downes noted that three national organizations that set occupational safety and health standards--the American National Standards Institute ("ANSI"), the National Institute for Occupational Safety and Health ("NIOSH"), and OSHA--all recommend that SCBA's should not be worn with facial hair which contacts the sealing surface of the face piece. Id. at p 10. In addition to submitting the Downes affidavit, the City in its summary judgment memorandum also referred to the OSHA, NIOSH, and ANSI recommendations, and cited directly to the OSHA respirator standard. The OSHA regulation provides: "Respirators shall not be worn when conditions prevent a good face seal. Such conditions may be a growth of beard...." OSHA Occupational Safety and Health Standards, Respiratory Protection, 29 C.F.R. Sec. 1910.134(e)(5)(i).[8]
 
 
 41
 We hold that this evidence that safety concerns necessitate the ban on shadow beards is "credible evidence ... that would entitle [the City] to a directed verdict if not controverted at trial." Four Parcels, 941 F.2d at 1438 (quoting Celotex, 477 U.S. at 325, 106 S.Ct. at 2553 (Brennan, J., dissenting)). The City has thus carried its movant's initial summary judgment burden on the business necessity issue.
 
 
 42
 At this point, responsibility devolves upon the firefighters to come forward with evidence that, when considered together with the City's evidence, is sufficient to create a genuine issue as to the reality of the City's safety claims. The only real evidence invoked by the firefighters to counter the City's claims is the fact that for the six years between 1982 and 1988 the City permitted firefighters with PFB to wear their SCBA's over shadow beards. The firefighters argue that the fact that the shadow beard program was tested over this period, apparently without mishap or reported problems obtaining adequate seals, creates at least a genuine issue that shadow beards may in fact be safe. Firefighters' Brief on Appeal at 26; Firefighters' Memo Opposing Summary Judgment (R-33-26-27). We disagree. The firefighters have not adduced evidence showing how carefully the firefighters' seals were monitored over this period, or whether examinations were made that would have uncovered any resulting safety or health problems. The mere absence of unfortunate incidents is not sufficient to establish the safety of shadow beards; otherwise, safety measures could be instituted only once accidents had occurred rather than in order to avert accidents. Although the six-year history is not irrelevant to the question of whether it is unsafe to wear SCBA's over shadow beards, we hold that when considered in the context of the totality of the evidence, it would not be sufficient to prevent the City from obtaining a directed verdict at trial.
 
 
 43
 In reaching this conclusion we are swayed particularly by the recommendations of the occupational safety and health standards organizations. Although public employers such as the City are not required by law to comply with OSHA standards, see 29 U.S.C. Sec. 652(5) (excluding states and their political subdivisions from definition of OSHA "employer"), such standards certainly provide a trustworthy bench mark for assessing safety-based business necessity claims. It is true that the OSHA and ANSI standards speak in somewhat general terms about "facial hair" and "growths of beard" and do not specifically address the case of very short shadow beards; however, the NIOSH standard provides that "even a few days growth of stubble should not be permitted." See supra note 8. At least in the absence of any evidence showing that safety experts view shadow beards as a special case, we hold that the only reasonable inference supported by the OSHA, ANSI, and NIOSH standards is that shadow beards are encompassed by the prohibitions.
 
 
 44
 This is not to say that allegations that a challenged practice is required for safety are by any means unassailable. Expert testimony or results from adequately conducted field tests tending to show that shadow beards do not prevent SCBA's from sealing to the face would be sufficient to create a genuine issue as to the reality of the City's safety claims. However, the firefighters have come forward with no such evidence.[9] We thus hold that the firefighters have failed to carry their non-movant's summary judgment rebuttal burden and that, therefore, there was in the record before the district court at the time of the summary judgment motion no evidence creating a genuine issue as to whether safety requires the ban on shadow beards.
 
 
 45
 b. Less Discriminatory Alternative Issue
 
 
 46
 As stated above, in order for the City to be entitled to summary judgment on the disparate impact claim, there must also be no genuine issue of fact with respect to whether a less discriminatory comparably effective alternative to the no-beard rule is available. The existence of a less discriminatory alternative is an issue on which the firefighters, the non-movants, would bear the burden of proof at trial. Thus, our analysis of whether there exists a genuine issue as to this material fact begins with an examination of whether the City has carried the movant's initial burden applicable for issues on which the movant would not bear the burden of proof at trial.
 
 
 47
 In such circumstances, the movant may carry the initial burden by adducing evidence affirmatively negating the material fact at issue, or else by showing an absence of evidence on the part of the non-movant to prove the fact at trial. See discussion supra Part II.B.2. As discussed above, the City has cited the OSHA, ANSI, and NIOSH safety standards which advise that safety requires that SCBA-wearers be clean-shaven. See supra Part IV.A.3.a. We believe that this evidence affirmatively demonstrates, not only that being clean-shaven is a business necessity for firefighters, but also that any proposed less discriminatory alternatives to the no-beard rule that would not require firefighters to be clean-shaven would not be adequately safe. Thus the evidence is sufficient to satisfy the City's initial burden as the summary judgment movant on the less discriminatory alternative issue.
 
 
 48
 Responsibility then devolves upon the firefighters to adduce evidence creating a genuine issue as to the availability of a comparably safe, less discriminatory alternative. The firefighters have proposed two possible alternatives to the City's rule requiring firefighters to be clean-shaven. The first is simply reinstitution of the shadow beard shaving clinic. However, in order for the shadow beard program to constitute a legitimate less discriminatory alternative, shadow beards must adequately serve the Fire Department's acknowledged business need, namely, safety. As we have explained above in addressing the City's business necessity defense, the firefighters have failed to create a genuine issue that shadow beards are safe. Thus, for the same reason, they have also failed to create a genuine issue that the shaving clinic would be a comparably effective alternative to the shadow beard ban.
 
 
 49
 The second possible alternative suggested by the firefighters is shaving only the portion of the face where the SCBA seal would come into contact with the skin. However, in the two sentences of their summary judgment papers in which they propose this alternative, the firefighters cite no evidence to show that partial shaving would be a viable and safe alternative.[10] Moreover, as a matter of common knowledge, it is apparent that partial shaving would pose the same PFB problems as full-face shaving, and thus it is doubtful that the firefighters could have adduced evidence that partial shaving constitutes a viable less discriminatory alternative. Thus, the firefighters have failed to carry their summary judgment rebuttal burden of creating a genuine issue as to the viability of either of the two less discriminatory alternatives they propose.[11] Having concluded (1) that the City has carried its initial summary judgment burdens on the business necessity and less discriminatory alternative issues, and (2) that the firefighters have failed to carry their summary judgment rebuttal burdens on either of these two points, we affirm the grant of summary judgment on the Title VII disparate impact claim.
 
 B. Title VII Disparate Treatment Claim
 1. Elements of Claim
 
 50
 The firefighters also challenge the no-beard rule on the ground that it was allegedly adopted for racially discriminatory reasons in violation of Title VII. Where, as here, Title VII plaintiffs alleging intentional discrimination--commonly known as disparate treatment--lack direct evidence that an employment-related action was taken for discriminatory reasons, courts usually use the special evidentiary framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Commun. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to determine whether the available circumstantial evidence is sufficient to prove that discrimination has occurred. See Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir.1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).
 
 
 51
 Like the analytic framework used for disparate impact claims, the McDonnell Douglas-Burdine disparate treatment framework is composed of three stages. A prima facie case of discrimination is made out when a plaintiff adduces evidence tending to show that the challenged adverse employment action is not readily explainable by considerations of merit. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Upon such a showing, the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. If the employer succeeds in discharging this light burden, the plaintiff may prevail only by "demonstrat[ing] that the proffered reason was not the true reason for the employment decision. [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256, 101 S.Ct. at 1095. See also B. Schlei & P. Grossman, Employment Discrimination Law 1314 (2d ed. 1983).
 
 
 52
 The McDonnell Douglas-Burdine framework has been used to analyze suits alleging a wide variety of different types of intentional discrimination. See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir.1984) (discussing different variants of framework used to analyze cases alleging discrimination in hiring, firing, and application of disciplinary rules). As the leading treatise on the law of employment discrimination explains,
 
 
 53
 [T]he elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances. The central inquiry in evaluating whether the plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference (i.e., a rebuttable presumption) that the basis for an employment-related decision was an illegal criterion.
 
 
 54
 B. Schlei & P. Grossman, Employment Discrimination Law 476 (2d ed. 5-Year Cum.Supp.1989) (footnote omitted).
 
 
 55
 Because the firefighters allege disparate treatment but do not possess any direct evidence showing that the no-beard rule was instituted for discriminatory reasons, they are permitted to proceed under the McDonnell Douglas-Burdine framework using circumstantial evidence. However, the particular employment practice targeted by the firefighters is not of the sort typically challenged under disparate treatment theory. In most disparate treatment cases, a plaintiff alleges that an otherwise legitimate rule or policy is being invoked pretextually as an excuse for what is really discrimination. In this case, however, it is the employment policy itself--the no-beard rule--with which plaintiffs take issue. They charge that the rule was adopted for the purpose of removing from the Fire Department a group of African-American men: the plaintiff firefighters suffering from PFB. Such challenges are more typically brought as disparate impact claims and, of course, appellants have also chosen to proceed under that theory.
 
 
 56
 In light of this difference between the firefighters' challenge and the typical disparate treatment claim, it is not obvious what would constitute the elements of a prima facie case in this circumstance.[12] As it turns out, however, it is not necessary for us to resolve this question. The district court assumed arguendo that the firefighters had made out a prima facie case of disparate treatment under the McDonnell Douglas-Burdine framework and went on to grant summary judgment on other grounds. Magistrates's Report (R-43-15-19). We affirm for the same reasons.
 
 2. Propriety of Summary Judgment
 
 57
 Where a plaintiff, lacking direct evidence of discrimination, proceeds under the McDonnell Douglas-Burdine framework, the defendant is entitled to prevail where (1) it has come forward with a legitimate, nondiscriminatory explanation for the challenged employment action, and (2) the plaintiff has failed to discredit the proffered justification or to show that a discriminatory reason more likely motivated the challenged action. Assuming arguendo that the firefighters have succeeded in making out a prima facie case of disparate treatment, the City has adduced evidence showing that at trial it would readily be able to carry its light burden of coming forward with a legitimate, nondiscriminatory reason--namely, safety--for its reinstitution of the shadow beard ban. See City's Memo in Support of Summary Judgment Motion (R-31-10-11) (citing Deposition of George Napper, Jr., former Commissioner, Atlanta Dep't of Public Safety). The City is therefore entitled to summary judgment on the disparate treatment claim if there is no genuine issue that its proffered safety justification is not a pretext for discrimination. Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1564 (11th Cir.1987) (genuine issue regarding pretext bars summary judgment).
 
 
 58
 As discussed above, the City has adduced evidence that safety considerations require firefighters to be clean-shaven, and plaintiffs have not adduced evidence sufficient to call that contention into question. See supra Part IV.A.3.a. We hold that this same evidence suffices to carry the City's movant's initial summary judgment burden with respect to the issue of absence of pretext. Thus, in order to avoid summary judgment, the firefighters must have adduced evidence that, when considered along with the City's evidence, creates a genuine issue that the proffered safety justification is, in fact, a pretext for discrimination.
 
 
 59
 The firefighters invoke only one piece of evidence in their attempt to undermine the credibility of the proffered safety justification: the fact that the same occupational safety standards organizations that recommend against the wearing of SCBA's over facial hair also warn that facial conditions such as acne, dentures, glasses, scars, deformities, and deep skin folds can interfere with the safe use of SCBA's. See Firefighters' Memo Opposing Summary Judgment (R-31-11-13).[13] Appellants contend that, because when the City reinstituted the nobeard rule it issued no regulations concerning these other conditions, this underinclusiveness shows that the City's claim that it was motivated by safety concerns is in fact pretextual. Id.; Firefighters' Brief on Appeal at 21.
 
 
 60
 We find this fact insufficient to create a genuine issue as to the sincerity of the City's claims that it reinstituted the no-beard rule out of concern for safety. Although the Fire Department did not ban the wearing of SCBA's by persons with other hazardous facial conditions when it first adopted the no-beard rule, the Department did not immediately begin enforcing the new prohibition. By the time the Department began actually enforcing the no-beard rule, it had also amended its policies to address problems caused by one of the other above-noted facial conditions: eyeglasses. See City's Reply Memo in Support of Summary Judgment Motion (R-39-5), citing Dep't of Pub. Safety Special Order 3.23 (R-31-Attach. 1, Exhib. E, p 7.6.1).[14] In light of the substantial evidence adduced by the City in support of its safety justification, we hold that no reasonable finder of fact could find the justification pretextual solely on the basis of the underinclusiveness of the City's SCBA safety rule. Accordingly, the City is entitled to summary judgment on the Title VII disparate treatment claim.
 
 
 61
 C. Claim Under Sec. 504 of the Rehabilitation Act of 1973
 
 1. Elements of Claim
 
 62
 Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a), provides that:
 
 
 63
 No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 64
 The appellant firefighters allege that, because they suffer from PFB, they qualify as handicapped individuals. They contend that the City's preventing them from working as firefighters on account of that condition constitutes illegal "exclu[sion] from ... [and/or] discrimination under a[ ] program ... receiving Federal financial assistance" in violation of Sec. 504.[15]
 
 
 65
 The statute defines the term "handicapped individual" as including, inter alia,
 
 
 66
 any person who ... has a physical or mental impairment which substantially limits one or more of such person's major life activities....
 
 
 67
 29 U.S.C. Sec. 706(8)(B)(i). U.S. Department of Health and Human Services ("HHS") regulations implementing Sec. 504[16] define "major life activities" as including "working." 45 C.F.R. Sec. 84.3(j)(2)(ii). The regulations define "physical or mental impairment" as including "any physiological disorder or condition, [or] cosmetic disfigurement, ... affecting ... [the] skin." 45 C.F.R. Sec. 84.3(j)(2)(ii). PFB qualifies as a "physical ... impairment" as it is a "physiological disorder or condition ... affecting ... [the] skin." That impairment, and the firefighters' inability to shave that results from it, "substantially limit" the firefighters' ability to engage in the "major life activity" of work on account of the no-beard rule. Thus, under the HHS Sec. 504 regulations and the 29 U.S.C. Sec. 706(8)(B)(i) statutory definition, the appellant firefighters would seem to qualify as "handicapped individual[s]."
 
 
 68
 Section 504 has been construed as requiring federal funds recipients to refrain from engaging in several different sorts of discrimination against the handicapped. See Prewitt v. U.S. Postal Service, 662 F.2d 292, 305 n. 19 (5th Cir. Unit A Nov. 1981). One such non-discrimination duty is the affirmative obligation to provide "reasonable accommodations" where such accommodations would permit "otherwise qualified handicapped individual[s]" to participate in activities in which they would otherwise be unable to take part. School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (citing 45 C.F.R. Sec. 84.12(c)); Southeastern Community College v. Davis, 442 U.S. 397, 412-13, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979); B. Tucker & B. Goldstein, Legal Rights of Persons with Disabilities 5:1 (1991). The firefighters allege that the City has violated this duty.
 
 
 69
 Section 504 requires covered institutions to provide reasonable accommodations to handicapped persons only where such persons are "otherwise qualified" to participate in the activity at issue. 29 U.S.C. Sec. 794(a). In the employment context, a handicapped person is deemed "otherwise qualified" for a position if he or she "can perform 'the essential functions' of the job in question." Arline, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 (quoting 45 C.F.R. Sec. 84(3)(k) (HHS)). Performing the essential functions of a job means, among other things, being able to perform those functions without risk of serious physical harm to oneself or others. See B. Tucker & B. Goldstein, supra, at 5:16-19.
 
 2. Propriety of Summary Judgment
 
 70
 With respect to the Sec. 504 claim, the district court appeared to rest its grant of summary judgment on two separate grounds. First, while conceding that work constitutes a "major life activity" for the purposes of 29 U.S.C. Sec. 706(8)(B)(i), the court appeared to express some doubt whether PFB qualifies as a "physical impairment" or whether PFB indeed precludes shaving, thereby "substantially limit[ing] ... [the] major life activit[y]" of working, on account of the no-beard rule. See Magistrates's Report (R-43-20-21). Second, the court found that the firefighters had failed to show the availability of a reasonable accommodation through which they might safely perform the essential functions of their job without having to be clean-shaven. Id. at 21. Although it appears probable to us that the district court erred insofar as it indicated that the firefighters do not qualify as "handicapped individual[s]" under 29 U.S.C. Sec. 706(8)(B)(i), it is not necessary for us to rule on that issue. We find that the second ground for summary judgment relied on by the district court was correct and we therefore affirm the grant on that basis.
 
 
 71
 A Sec. 504 employer defendant is entitled to prevail on a reasonable accommodation claim where there exists no reasonable accommodation by which the employee plaintiff would be able to perform the essential functions of the job. A defendant is thus entitled to summary judgment on a Sec. 504 reasonable accommodation claim where there exists no genuine issue with respect to the availability of reasonable accommodation. As we have explained above in the course of our discussion of the less discriminatory alternative inquiry under the Title VII disparate impact claim, the City has adduced evidence affirmatively showing that the no-beard rule is required for safety and that there exists no comparably safe, less discriminatory alternative to the ban. See supra Part IV.A.3.b. Because of the conceptual similarity between the Title VII less discriminatory alternative and the Sec. 504 reasonable accommodation showings, this same evidence suffices to carry the City's initial burden of showing that there exists no reasonable accommodation that would permit the firefighters to perform the essential function of obtaining a safe seal on their SCBA's without being clean-shaven. In other words, we find, as we did with respect to the Title VII less discriminatory alternative issue, that the City's evidence showing that the no-beard rule is required by safety also constitutes an affirmative showing that there exists no reasonable accommodation by which the firefighters with PFB would be able to perform their jobs safely without being clean-shaven. See supra Part II.B.1.[17] See also City's Memo in Support of Summary Judgment Motion (R-31-17-18); City's Reply Memo in Support of Summary Judgment Motion (R-39-6-8).
 
 
 72
 As also discussed above, the firefighters have proposed as reasonable accommodations two possible alternatives to the no-beard rule: reinstituting the shadow beard program, or requiring the firefighters to shave just the portions of their faces that come into contact with the SCBA seal. See Firefighters' Memo Opposing Summary Judgment (R-31-26). However, the firefighters have failed to come forward with any evidence showing that through either of these two means firefighters with PFB would be able to perform the essential function of obtaining adequate seals on their SCBA's. See discussion supra Part IV.A.3.b. In light of the City's substantial evidence that SCBA's cannot adequately seal over shadow beards and the unrebutted reasonable inference that partial shaving would not be viable and safe for men with PFB, the firefighters' evidence is insufficient to create a genuine issue as to the availability of an adequate reasonable accommodation. The City is thus entitled to summary judgment on the Sec. 504 reasonable accommodation claim as well.
 
 V. CONCLUSION
 
 73
 For the foregoing reasons,[18] we affirm the ruling of the district court granting summary judgment for the City on each of the firefighters' claims.
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 In their summary judgment papers the firefighters also stated that they were asserting a cause of action for illegal retaliation under Title VII, Sec. 704(a), 42 U.S.C. Sec. 2000e-3(a). They alleged that the Fire Department had retaliated against the plaintiff firefighters for their having filed this EEO action. See Firefighters' Memo Opposing Summary Judgment (R-33-27-31). Although the magistrate judge and district court neglected to address this claim, we need not consider it as the firefighters have abandoned the issue, having failed to raise it in their brief on appeal
 
 
 [2]
 In applying this rule, there has been some confusion among courts as to the nature of the showing required when the movant seeks to discharge the initial responsibility in the first of the two permitted manners--by demonstrating that there is an absence of evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608-09 n. 8 (11th Cir.1991) (noting confusion). Although this confusion has largely been resolved in this circuit by prior decisions of this court, see Four Parcels, 941 F.2d at 1438 & n. 19; Coats & Clark, 929 F.2d at 608; see also Celotex, 477 U.S. at 332, 106 S.Ct. at 2555 (White, J., concurring); Melissa L. Nelkin, One Step Forward, Two Steps Back: Summary Judgment After Celotex, 40 Hastings L.J. 53, 68-69 (1988), it is not necessary for us to rehearse this body of law in this opinion, for on none of the grounds on which we decide this case does the City attempt to carry its movant's initial summary judgment burden by showing that the firefighters would lack evidence to prove at trial a necessary element of their case
 
 
 [3]
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party
 Fed.R.Civ.P. 56(e). Where a non-moving party could with further discovery acquire evidence sufficient to carry his or her burden and avoid summary judgment, the party may move pursuant to Fed.R.Civ.P. 56(f) for a continuance to obtain further evidence.
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [5]
 Prior to 1989, the "business necessity" showing was an affirmative defense for which the defendant bore the burden of proof and risk of nonpersuasion. Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977); Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971); Larkin v. Pullman-Standard Div., Pullman, Inc., 854 F.2d 1549, 1580 (11th Cir.1988), vacated sub nom., Pullman-Standard, Inc. v. Swint, 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989). In 1989, the Supreme Court in Wards Cove changed the law, holding that the defendant bore only the burden of coming forward with an alleged business-related justification for the challenged practice which the plaintiff would then have to disprove in order to prevail. Wards Cove, 490 U.S. at 659, 109 S.Ct. at 2126. The Court also broadened the scope of the necessity defense by holding that practices causing a disparate impact were permissible, even if they could not be shown to be absolutely necessary, so long as they "served, in a significant way, the legitimate employment goals of the employer." Id. at 659, 109 S.Ct. at 2125-26. These changes were statutorily reversed by the Civil Rights Act of 1991, Pub.L. No. 102-166, Sec. 105(a), 105 Stat. 1071, 1074-75 (codified at 42 U.S.C. Secs. 2000e-2(k)(1)(A))
 
 
 [6]
 Though recognizing that measures necessary to protect employees or third parties from documented health or safety hazards are "required by business necessity," courts have stressed that merely asserting a safety rationale does not suffice to prove the defense. See Maclennan v. American Airlines, Inc., 440 F.Supp. 466, 472 (E.D.Va.1977) ("[T]he incantation of a safety rationale is not an abracadabra to which [a] [c]ourt must defer judgment."). An employer's subjective belief that a practice is necessary, without any supporting evidence, is plainly insufficient to justify a discriminatory practice. See Craig v. County of Los Angeles, 626 F.2d 659, 667 n. 8 (9th Cir.1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1364, 67 L.Ed.2d 345 (1981); United States v. Lee Way Motor Freight, Inc., 625 F.2d 918, 941-43 (10th Cir.1979). In order to establish a safety-based business necessity defense, employers have been required to present convincing expert testimony demonstrating that a challenged practice is in fact required to protect employees or third parties from documented hazards. See Burwell v. Eastern Air Lines, Inc., 633 F.2d 361, 365-66 (4th Cir.1980) (plurality opinion), cert. denied, 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981); see also Harriss v. Pan Am. World Airways, Inc., 649 F.2d 670, 675 (9th Cir.1980); Levin v. Delta Air Lines, Inc., 730 F.2d 994, 997 (5th Cir.1984). The sources of proof invoked by the City in this case to prove its safety defense meet this evidentiary standard. See infra
 
 
 [7]
 Downes also described three other hazards that might be posed by use of an SCBA by a man with facial hair. However, none of these appear to be as important as the risk of overbreathing. First, Downes stated that an imperfect seal is likely to permit air from the wearer's tank supply to leak out around the sides of the mask, thereby causing the wearer to deplete his air supply more quickly than he otherwise would. Id. at p 6. Second, Downes warned that "significant facial hair" might clog the exhalation valve of the SCBA, perhaps permitting contaminants to enter through it. Id. at p 8. From Downes' description it does not appear that the very short shadow beards would necessarily pose this risk. Third, Downes stated that air leaking out of a mask due to an imperfect seal might create air turbulence which might then in turn force contaminated air back into the mask. Id. at p 9. Downes conceded, however, that this concern "is theoretical at this point in time." Id
 
 
 [8]
 Although the City did not put into the record the recommendations of ANSI and NIOSH referred to in its memorandum and in the Downes affidavit, the firefighters attached documents detailing these organizations' respirator standards to their memorandum opposing summary judgment. The ANSI and NIOSH standards set out in those documents are as follows:
 A respirator equipped with a facepiece shall not be worn if facial hair comes between the sealing periphery of the facepiece and the face....
 ANSI Practices for Respirator Protection, Z88.2-1980, Sec. 3.5.8 (R-33-Exhib. E).
 Facial hair that lies along the sealing area of the respirator, such as beards, sideburns, moustaches, or even a few days growth of stubble should not be permitted on employees who are required to wear respirators that rely on a tight facepiece fit to achieve maximum protection. Facial hair between the wearer's skin and the sealing surfaces of the respirator will prevent a good seal.
 NIOSH Guide to Industrial Respiratory Protection at 119 (Sept. 1, 1987) (R-33-Exhib. F).
 
 
 [9]
 It is true that on appeal the firefighters referred to evidence that two of the plaintiff firefighters took and passed a firefighting skills examination, one component of which apparently tested use of a SCBA's. See Firefighters' Brief on Appeal at 30 & Exhib. A. However, appellate review of summary judgment rulings is conducted on the basis of the record presented to the district court and we ordinarily decline to take into account evidence referred to for the first time on appeal. Moreover, even if we were to consider it, we would deem this evidence insufficient to create a genuine issue as to the City's contention that shadow beards are unsafe
 The evidence adduced by the firefighters describing this test failed to specify the nature of the SCBA test, to note whether it focused on the adequacy of the seal, or to separate the results of the segment of the test that rated SCBA use from those of the segments testing other skills. In light of these critical lapses and the fact that the examination was a one-time test of just two firefighters, this evidence, even if it had been presented to the district court, would not have been sufficient to call the City's safety claims into question.
 The firefighters also call to our attention a factual finding made by the District of Columbia Superior Court in a case involving a similar challenge to a fire department no-beard rule by African-American firefighters suffering from PFB. The court in that case found that SCBA's can safely seal over shadow beards. See Kennedy v. Dixon, No. 2264-83, 1991 WL 489548 (D.C.Superior Court) (R-55), quoted in Firefighters' Brief on Appeal at 28. Appellants argue that this court should take judicial notice of this finding, and treat it as creating a genuine issue as to validity of the City's safety allegations.
 It is true that where in civil rights cases the racially discriminatory nature of a particular policy or practice has been consistently recognized in other decisions, courts have absolved plaintiffs of responsibility for adducing evidence of their own to prove that such is indeed the case. Rather than force such plaintiffs to "reinvent the wheel," courts have taken judicial notice of the findings made by other courts in similar cases. See United Steelworkers v. Weber, 443 U.S. 193, 198 n. 1, 99 S.Ct. 2721, 2725 n. 1, 61 L.Ed.2d 480 (1979). However, appellants failed to call the Kennedy case to the attention of the district court during the summary judgment proceeding, and we believe that judicial notice of its findings is not appropriate in this appeal.
 
 
 [10]
 The following is their discussion of the partial shaving option in its entirety:
 Another reasonable accommodation might be shaving only the portion of the face where the seal would come into contact with the skin. However, this method has never been attempted or tested by the Defendant. (See Dep. of Chamberlain, p. 28).
 Firefighters' Memo Opposing Summary Judgment (R-31-26). Thus, the firefighters allege no more than that partial shaving "might" be a viable alternative and that the City has failed to explore the possibility.
 Indeed, the firefighters themselves do not appear particularly interested in pursuing the partial shaving alternative. Not only was the option proposed only in passing in a couple of lines of their summary judgment memorandum, but appellants' counsel, when questioned about possible alternative practices at oral argument before this court, made no mention of partial shaving.
 
 
 [11]
 On appeal, appellants attempted to proffer for the first time evidence concerning the availability of a third less discriminatory alternative practice: use of a different style of SCBA incorporating a larger mask that covers the whole of the front of the wearer's head. This alternative was not part of the record before the district court, and so cannot properly be considered by this court as we evaluate the propriety of the summary judgment grant
 
 
 [12]
 The nature of the showing required to make out a prima facie case of disparate treatment varies depending on the nature of the employment action at issue. As a general matter, a Title VII plaintiff need only show that he or she belongs to a protected group and that it appears from the circumstances that the adverse employment action is not readily explained by legitimate reasons. For example, in a suit charging that a job applicant has been denied a job for discriminatory reasons, a prima facie case is established once the plaintiff shows that:
 (i) that he belongs to a [protected group]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after the rejection, the position remained open and the employer continued to seek applica[tions] from persons of complainant's qualifications.
 McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. For a description of the elements of the prima facie case in suits challenging other types of discriminatory actions, see Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir.1984).
 
 
 [13]
 See NIOSH Guide to Industrial Respiratory Protection at 119-20 (Sept. 1, 1987) (R-33-Exhib. F) (noting that eye glasses, facial deformities such as scars, deep skin creases, prominent cheekbones, severe acne, and the lack of teeth or dentures can prevent SCBA from sealing properly); OSHA Occupational Safety and Health Standards, Respiratory Protection, 29 C.F.R. Sec. 1910.134(e)(5)(i) (noting same about sideburns, skull caps that project under the face piece, temple pieces on glasses, and absence of one or both dentures)
 
 
 [14]
 Thus, when they actually took effect, the City's SCBA safety rules were not as underinclusive as the firefighters charge. Moreover, the record supports the inference that the City is addressing safety problems pursuant to a reasonable priority, and does not indicate that the City is using safety as a pretext for discrimination
 
 
 [15]
 In their complaint the firefighters allege that the City Fire Department receives financial assistance from the federal government and therefore is subject to the non-discrimination duty that Sec. 504 imposes on federal funds recipients. Complaint (R-1-8, p 29). In its answer the City admits this fact. Answer (R-2-p 29)
 
 
 [16]
 The amended Rehabilitation Act instructs each federal agency distributing federal financial assistance to "promulgate such regulations as may be necessary to carry out" the purposes of Sec. 504. 29 U.S.C. Sec. 794(a). The firefighters cited to the district court, and the court accepted as controlling, regulations implementing Sec. 504 that were promulgated by HHS. See Magistrates's Report (R-43-20) (citing 45 C.F.R. Sec. 84.3(j)(2)). However, the Sec. 504 duties of a recipient of federal financial assistance are defined by the implementing regulations issued by the particular agency from which the recipient secures its federal aid. Nowhere in the record do the parties specify from which federal agency or pursuant to what program the Fire Department receives federal funds. We thus have no way of knowing which agency's Sec. 504 regulations ought properly to govern this case. However, it happens to be the case that for all of the definitional issues on which we consult agency regulations below, the regulations of all federal agencies are identical. See, e.g., 7 C.F.R. Sec. 15b.3(i), (j)(1), (k) (Agriculture); 10 C.F.R. Sec. 1040.62(c), (d)(1)(i), (d)(2) (Energy); 15 C.F.R. Sec. 8b.3(g)(1)(i), (3)(i)(A), (3)(ii) (Commerce); 22 C.F.R. Sec. 142.3(j)(1)(i), (2)(i)(A), (2)(ii) (State); 24 C.F.R. Sec. 8.3 (HUD); 28 C.F.R. Sec. 42.540(k)(1)(i), (2)(i)(A), (2)(ii) (Justice); 29 C.F.R. Sec. 32.3 (Labor); 34 C.F.R. Sec. 104.3(j)(1)(i), (2)(i)(A), (2)(ii) (Education); 38 C.F.R. Sec. 18.403(j)(1)(i), (2)(i)(A), (2)(ii) (Veterans Affairs); 40 C.F.R. Sec. 7.25 (EPA); 45 C.F.R. Sec. 84.3(j)(1)(i), (2)(i)(A), (2)(ii) (HHS); 49 C.F.R. Sec. 27.5 (Transportation). In view of this fact, there is no harm in treating as controlling the HHS regulations relied upon by the district court
 
 
 [17]
 One distinction between the two showings is that while the plaintiff bears the burden of proof on the Title VII less discriminatory alternative, it is the defendant who does so on Sec. 504 reasonable accommodation. Treadwell v. Alexander, 707 F.2d 473, 475 (11th Cir.1983); Simon v. St. Louis County, 735 F.2d 1082, 1084 (8th Cir.1984). However, this difference is not significant for present purposes. It is true that for issues on which the summary judgment movant would not bear the burden of proof at trial, the movant may take advantage of an additional means of carrying the initial burden--showing an absence of evidence on the part of the non-movant to prove the fact at trial--not available where the movant bears the burden of proof on the issue. Compare supra Part II.B.1 with Part II.B.2. However, in this case the City carried its initial burden on the Title VII less discriminatory alternative by coming forward with affirmative evidence showing that the no-beard rule is necessary. See supra Part IV.A.3.a & b. Such an affirmative showing is also sufficient to carry a movant's initial burden on an issue, like Sec. 504 reasonable accommodation, on which the movant would bear the burden of proof at trial. See supra Part II.B.1. Thus, in this case the fact that the City carried its movant's initial summary judgment burden on the Title VII less discriminatory alternative issue means that it has also done so on that of reasonable accommodation under Sec. 504
 
 
 [18]
 The firefighters also challenge the no-beard rule relying on a constitutional substantive due process theory. However, even assuming arguendo that a substantive due process right would be implicated if the government were to reach out and require male citizens to shave, there would still be no constitutional violation on the facts of this case under the analyses prescribed by any of the cases cited by the firefighters, see Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), or by any remotely analogous case. Accordingly, we reject the firefighters' substantive due process argument without further discussion