**Sandra L. MURRAY, et al., Plaintiffs,**

v.

**JOHN D. ARCHBOLD MEMORIAL HOSPITAL, INC., et al., Defendants.**

**No. 6:96CV–67 (WLS).**

United States District Court, M.D. Georgia, Thomasville Division.

March 31, 1999.

**1370**

Kent Spriggs, Tallahassee, FL, Christopher David Adams, Athens, GA, for Sandra L. Murray, Pam Stewart, Lola Gainous, Georgia Basulto, Benjamin F. Smith, plaintiffs.

Christopher David Adams, Athens, GA, for Marie Hall, Sandra williams, Tamela Taylor, Sherry Ring, Yvette Henry, Annette Prince, Brenda Wright, Carrie Ashley, Sandra Scott, Suzanne Stevens, Sandra Durrance, Rebecca Terry, Kathy Williams, Neal Faile, Steffanie Goins, Donna Jones, Rochelle Jones, Sharon Thompson, Tawanna Robinson, Pamela Smith, Teresa Jones, Jennifer Lindquist, plaintiffs.

Kenneth J. Barr, Mr., Atlanta, GA, George R. Lilly, II, Mr., Thomasville, GA, for defendants.

### ORDER

SANDS, District Judge.

Plaintiff Sandra L. Murray and the other named and putative plaintiffs in the above-entitled class action seek legal and equitable remedies against Defendants John D. Archbold Memorial Hospital, Inc. and its hospital affiliates for violating their civil rights by denying them employment because of their weight. The gravamen of Plaintiffs' complaint is that Defendants enforced a policy that disqualified an applicant from employment if he or she exceeded a standard weight, relative to his or her height, and thereby discriminated against them by regarding them as disabled, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Federal Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 701 *et seq.*

After careful review of the allegations raised in the amended complaint, the admissible and material facts set forth in connection with the parties' cross-motions for summary judgment, and the parties' arguments in light of the applicable law, the Court concludes that Defendants' motion for summary judgment should be granted because the Plaintiffs are not "disabled" within the meaning of the ADA and are procedurally barred from prosecuting their claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

### BACKGROUND AND PROCEDURAL HISTORY

The primary Plaintiff, Sandra L. Murray ("Murray"), alleged in her initial complaint that she applied for a position as a respiratory therapist at Defendants' Grady General Hospital on or about May 17, 1995. *Compl.* ¶ 12. Plaintiffs allege that even though Murray was qualified for that position, Defendants' hospital did not offer her employment because "Plaintiff's height-to-weight ratio failed the Defendant's guidelines and thus Plaintiff would not be offered any position with the Defendant." *Id.* ¶ 14. Plaintiff filed a formal charge with the Equal Employment Opportunity Commission ("EEOC") on July 17, 1995,

alleging that the Defendants' policy that required her to meet a certain height-to-weight ratio (hereinafter "the weight policy") unlawfully discriminated against her on the basis of a disability, in violation of the ADA, and on the basis of her race, in violation of Title VII. After receiving a right to sue letter from the EEOC, Murray timely filed this action on September 26, 1996. In her initial complaint, Murray sought "declaratory, injunctive, compensatory, punitive, and other equitable relief from discrimination in employment against the Plaintiff and all similarly situated [applicants], on account of a perceived disability and illegal pre-employment medical inquiries," in violation of the ADA. *Id.* ¶ 2.

The Court convened the parties for a status conference on February 5, 1998, to resolve the numerous and varied efforts to join additional parties, amend the complaint, and motions for summary judgment. At the status conference, the parties agreed that this action would be resolved most expeditiously if the Court decides the threshold issue of whether the Defendants' policy violates the ADA. The Court directed the parties to confer and propose a schedule for filing a joint stipulation of undisputed facts and cross-motions for summary judgment on the limited issue of whether the Defendants' policy violates the ADA.

Thereafter, on February 18, 1998, the parties submitted their Revised Scheduling Order (Pleadings File, vol. II). Consistent with the Court's instruction at the conference, the parties agreed upon a framework to file cross-motions for summary judgment, according to which Plaintiffs would amend their complaint and the parties would file a joint stipulation of undisputed facts in connection with their motions.

By Order entered March 11, 1998, the Court conditionally certified two classes for the purpose of resolving the issues of whether Defendants' weight policy violates the ADA, RHA, and Title VII, and if necessary, issuing declaratory and injunctive relief. The Court noted that, at this stage of the proceedings, the Court is prepared to resolve the key issues bearing on liability, and deferred ruling on the "definitive terms of the boundaries of the respective classes, especially with respect to the timing of an individual's application to Defendants' hospitals." Order of Mar. 11, 1999, at 4, n. 1. The Court further directed the parties to brief the issue of the applicable statutes of limitations that would apply to the plaintiffs' claims under the RHA. *Id.*

Presently before the Court are the parties' cross motions for summary judgment on the threshold issue of whether the Defendants' policy violates the ADA, RHA, and Title VII, as well as Defendants' renewed Motion for Summary Judgment on the issue of whether Plaintiffs' claims under the RHA are barred by the applicable statute of limitations.

## ALLEGATIONS IN THE COMPLAINT AND FACTS IN THE RECORD

On February 23, 1998, the Plaintiffs filed, with consent of Defendants, their (Sixth) Amended Complaint. The Amended Complaint consists of four counts: First, Defendants' weight policy constitutes a pre-employment questioning of Plaintiffs in violation of the ADA, 42 U.S.C. § 12111(c) [sic] § 12112(b)(6) (defining "discriminate" to include "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability....") *Am.Compl.* ¶ 39; second, "Defendants refused Plaintiffs employment based upon a perceived disability in violation of the [ADA]," *id.* ¶ 41; third, "Defendants refused Plaintiffs employment based upon a perceived disability in violation of section 504 of the [RHA]," *id.* ¶ 44; and fourth, "Defendants weight policy has a disparate impact on black applicants, par-

ticularly black female applicants." *Id.* ¶ 47.

The Amended Complaint names five individual plaintiffs, each of whom applied for employment with Defendants' hospitals between 1990 and 1996. Each of the named plaintiffs allege that Defendants' hospital withheld an offer of employment or withdrew on her own accord (Plaintiff Gainous) because he or she would not meet the requirements imposed by Defendants' weight policy. Significantly, the Amended Complaint does not allege any facts which suggests the actual weight of any one of the named individual plaintiffs; nor does the Amended Complaint allege that any other potential members of the class are disabled because he or she is so overweight so as to be morbidly obese. Rather, the Amended Complaint specifically alleges that Plaintiffs are "disabled" under the terms of the ADA and RHA because of "a perceived disability (weight)" and "as a result of failing the Defendants' height-to-weight ratio guidelines." Am.Compl. ¶ 11.

On February 24, 1998, the parties filed their Joint Stipulation of Undisputed Facts, which represents the statement of facts upon which the parties' cross-motions for summary judgment may be resolved.[1] Those undisputed, material facts appear as follows:

1. "From 1989 until 1996, Defendants maintained a maximum weight limitation standard for applicants. The weight limitation policy excluded from employment all applicants whose actual weight exceeds the maximum desirable weight of large-framed men and women plus 30% of that weight as published by a Metropolitan Life Insurance Company actuarial survey and the Georgia Dietetic Association."

Joint Stipulation of Undisputed Facts ("Joint Stip.") ¶ 2.

2. "The weight limitation was applicable to all applicants for positions within the Archbold hospital system. The policy was applied equally to all applicants for all positions within the Archbold hospital system, regardless of race. The weight limitation standard was first implemented in approximately January 1989 and was discontinued in August 1996." Joint Stip. ¶ 3.

3. " 'Obesity may be classified as mild (20% to 40% overweight), moderate (41% to 100% overweight) or severe ([more than] 100% overweight).' " Joint Stip. ¶ 4.

4. "Some of the Plaintiffs, and putative class members, were not severely or morbidly obese." Joint Stip. ¶ 5.

5. "Some of the Plaintiffs, and putative class members, do not allege that their weights were caused by underlying physical or mental disorders." Joint Stip. ¶ 6.

6. "Plaintiffs do not allege that their weight conditions were actual physical and mental impairments in and of themselves." Joint Stip. ¶ 7.

7. "Rather, Plaintiffs allege that the Defendants 'perceived' them as being 'disabled.' " Joint Stip. ¶ 8.

8. "The weight limitation policy did not apply to incumbent employees whose weight eventually exceeded the limit during their employment. The policy also did not apply to employees who were hired prior to the date Defendants implemented the policy." Joint Stip. ¶ 9.

9. "Specifically regarding named Plaintiff Murray, she interviewed

---

1. Furthermore, the Court notes that "Plaintiffs take the position that discovery is closed." Revised Scheduling Order ¶ 5.

for a certified respiratory position at Grady General Hospital on May 17, 1995. Her height-to-weight ratio failed the Defendants' guidelines." Joint Stip. ¶ 10.

10. "On June 5, 1995, Plaintiff Murray filled out an EEOC 'Employment Discrimination Complaint Questionnaire' alleging that Grady intentionally discriminated against her because of her race (black) and disability (excessive weight). Exhibit 1. Regarding her race claim, Plaintiff Murray stated:

I was told by an employee of Archbold of a white lady, who is overweight, that was hired recently as a social worker. This weight policy has supposedly been in effect for the last 3 or 4 years, but seems as if this rule is enforced when desired.

June 9, 1995 EEOC Questionnaire." Joint Stip. ¶ 11.

11. On July 17, 1995, Plaintiff Murray signed a formal charge of discrimination with the EEOC. Exhibit 2. In the 'Cause of Discrimination' section of the charge, Plaintiff Murray only checked the box[es] labeled 'race' and 'disability.' Specifically, she alleged:

I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and disability in violation of the Americans with Disabilities Act of 1990.

Plaintiff Murray's July 17, 1995 EEOC Charge.". Joint Stip. ¶ 12.

12. "Plaintiff Murray is the only named Plaintiff who filed an EEOC charge against Defendants." Joint Stip. ¶ 13.

13. "On June 28, 1996, the EEOC issued a 'no cause' determination for Plaintiff Murray's Title VII claims. Exhibit 3. That determination was limited to a finding that the evidence failed to demonstrate race discrimination, specifically stating the following:

Examination of the evidence reflects that the person who was hired by the Respondent for the position was more qualified than the Charging Party. The Respondent employs a Black male as a Respiratory Therapist Technician and it employs Black employees in other positions.

Based upon this analysis, I have determined that the evidence obtained during the investigation does not establish that the Charging Party was discriminated against, as alleged.

June 28, 1996 EEOC Determination. Joint Stip. ¶ 14.

14. Regarding the ADA claim, the EEOC determination specifically states the following:

However, like and related and growing out of this charge evidence obtained during the Commission's investigation disclosed that the Respondent has a weight/height restriction for the position of Respiratory Therapy Technician. If a policy disqualifies a person with a disability or their failure to qualify results from a disability, the policy cannot be used to exclude a person unless it is justified by business necessity. Such a justification has not been made by the Respondent. Accordingly, there is reasonable cause to believe that the use of this type of restriction is in violation of the ADA.

Exhibit 3. June 28, 1996 EEOC Determination." Joint Stip. ¶ 15.

15. "After submitting her Complaint Questionnaire and having the EEOC draft her Charge of Dis-

crimination, Plaintiff Murray retained Attorney Christopher Adams and was represented by him during the EEOC's investigation." Joint Stip. ¶ 16.

16. "Plaintiff Murray did not specifically assert a disparate impact claim with the EEOC until she signed a second EEOC charge on January 8, 1997. Exhibit 4. In the 'Cause of Discrimination' section of the charge, Plaintiff Murray only checked the box labeled 'race.' Plaintiff Murray's January 1997 charge expressly states the following:

I believe that the employer's weight policy has a disparate impact on black applicants and thus violates Title VII of the Civil Rights Act of 1964, as amended, because black people are more likely to be thirty percent over their ideal bodyweight.

Exhibit 4. Plaintiff Murray's January 9, 1997 EEOC Charge." Joint Stip. ¶ 17.

17. "On January 29, 1997, the EEOC dismissed Plaintiff Murray's second EEOC charge partially on the basis that it was untimely. Neither Plaintiff Murray's first nor second charge alleged any form of sex discrimination." Joint Stip. ¶ 18.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick*, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. *Fitzpatrick*, 2 F.3d at 1116. The adverse party may not respond to the motion for summary judgment simply by denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). As the Supreme Court explained, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to

make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### I *Plaintiffs' Claims of Discrimination in Violation of the ADA and the RHA*

■ The ADA provides that "[n]o covered entity," such as Defendants, "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The RHA affords comparable protection for the civil rights of disabled persons: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The ADA expressly defines the term "disabled" to mean, "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." § 12102(2).[2]

■ A plaintiff-applicant must prove that she has a disability as an element of her prima facie case for discrimination in violation of the ADA. *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). According to the Amended Complaint and Joint Stipulation of Undisputed Facts, Plaintiffs only contend that they are disabled on the basis of "being regarded as

having such an impairment." § 12102(2)(C). That is, Plaintiffs allege that Defendants regarded them as disabled by enforcing their weight policy against them, and thereby discriminated against them, presumably with respect to applicants—most of whom are allegedly non-Hispanic, white individuals—whose height-to-weight ratios satisfied the terms of Defendants' weight policy.

The EEOC defines three circumstances which would satisfy a plaintiff-applicant's claim for relief for discrimination because the Defendants "regarded" him or her as having such an impairment:

(1) [The applicant has] a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) [The applicant has] a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) [The applicant has] none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l* ). Crucial to each of the statutory provisions that define "disability" is the predicate of an "impairment" that distinguishes ordinary frailties from those physical and mental characteristics that substantially limit a person's ability to engage in a major life activity. As the Court of Appeals for the Second Circuit has explained, " 'such an impairment' within the meaning of subsection (C) plainly refers to a 'physical or mental impairment' within the meaning of subsection (A)."

---

**2.** The RHA defines "disabled" in virtually identical terms. *See* 29 U.S.C. § 705(20)(B) (defining "individual with a disability"), formerly 29 U.S.C.A. § 706(8)(B) (West 1997). For the sake of clarity, the Court's discussion

below will address Plaintiffs' claims simply in terms of the ADA, even though, strictly speaking, both statutes apply to Defendants' alleged conduct.

*Francis v. City of Meriden,* 129 F.3d 281, 286 (2nd Cir.1997).

Defendants have moved for summary judgment against Plaintiffs on the threshold issue of whether any of the applicants for employment were "disabled" within the meaning of the ADA. Defendants argue a plaintiff-applicant "must plead and prove that he or she has an *impairment* as defined by 29 C.F.R. § 1630.2(h)(1) & (2), or that the employer believes she has a substantially limiting impairment." Defs.' Mem. Supp. Mot. Summ. J. (Doc. No. 66) ("Def.' Mem.") at 3.[3] Defendants contend that "Plaintiffs' allegations of discrimination on the basis of weight blatantly fail these requirements because they are predicated entirely upon a mere physical characteristic (being overweight), not upon a legally recognized 'impairment.'" *Id.* Defendants have moved for summary judgment against Plaintiffs' ADA claim arising under each of the three standards of "as regarded," as defined by the EEOC. In their response, Plaintiffs do not present any arguments in favor of either of the first two standards, and concede that they "are proceeding under the third category," namely, that the plaintiffs-applicants have "none of the impairments defined in paragraphs (h)(1) or (2) of this section but [are] treated by a covered entity as having a substantially limiting impairment." Pls.' Br. Opp. Defs.' Mot. Summ. J. (Doc. No. 93) ("Pls.' Br. Opp.") at 5.

Defendants argue that Plaintiffs' cannot prove—and have not alleged—facts sufficient to show that their weight conditions constitute "actual impairments" within the meaning of the statute. As noted above, the parties have stipulated to the proposition that "Plaintiffs do not allege that their weight conditions were actual physical and mental impairments in and of themselves." Joint Stip. ¶ 7. The Defendants' weight policy "excluded from employment all applicants whose actual weight exceeds the maximum desirable weight of large-framed men and women plus 30% of that weight as published by a Metropolitan Life Insurance Company actuarial survey and the Georgia Dietetic Association." Joint Stip. ¶ 2. Furthermore, the parties have stipulated to the fact that " '[o]besity may be classified as mild (20% to 40% overweight), moderate (41% to 100% overweight) or severe ( [more than] 100% overweight).' " Joint Stip. ¶ 4. Defendants argue that summary judgment lies in their favor because, under these facts, the Defendants' "height/weight policy merely excluded applicants who were overweight. Plaintiffs make no allegation that anyone perceived them as having any legally recognized impairment." Defs.' Mem. at 6. Absent any specific facts—or allegations in the Amended Complaint—which show that any of the plaintiffs-applicants suffered from an "impairment" due to their weight, none of the plaintiffs-applicants can satisfy the first el-

---

3. The EEOC regulations define physical or mental impairment to mean:

"(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."
EEOC regulations define other terms relevant to "disabled" under the ADA as follows:

"(i) Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
(j) Substantially limits—(1) The term substantially limits means: (i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(h)–(j).

ement of their prima facie case of proving that he or she is "disabled" within the meaning of the ADA. In support of this interpretation of "disabled," Defendants mainly rely upon the authority of the decisions by the Court of Appeals for the Sixth Circuit in *Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir.1997) and the Second Circuit in *Francis, supra*. Defs.' Mem. at 6–8.

Plaintiffs resist this conclusion and insist that this interpretation is illogical because if the definition of "disabled" set forth in § 12102(2)(C) "required an actual impairment, then it would be indistinguishable from the categories [in subsections (A) and (B) ]." Pls.' Br. Opp. at 5. In support of their interpretation of the ADA, Plaintiffs rely chiefly on the authority of the decision by the Court of Appeals for the First Circuit in, *Cook v. State of Rhode Island*, 10 F.3d 17 (1st Cir.1993). Plaintiffs focus on the First Circuit's observation that the statute's "perceived disability model can be satisfied whether or not a person actually has a physical or mental impairment," 10 F.3d at 22, and understand that interpretation of the law to mean that "the First Circuit has flatly reject [sic] the Defendants' contention that an actual impairment is required." Pls.' Br. Opp. at 7. True enough, the First Circuit correctly concluded that the law does not require the plaintiff-applicant to actually have the particular impairment, yet in no terms does the First Circuit's decision imply that such an impairment is of no consequence. Indeed, this Court understands the First Circuit's subsequent analysis of "physical or mental impairment" to mean precisely that the plaintiff-applicant must be regarded as having the kind of impairment con-

templated by the statute in order to recover. 10 F.3d at 22. And significantly in *Cook*, the plaintiff's underlying physical impairment—actual or perceived—was *morbid obesity*, a specific condition which evidence in her case evidently led a jury to conclude, and the First Circuit to affirm, substantially interfered with major life activities, such as walking, lifting and bending, as well as foreclosing a broad range of employment options in the health care industry. *Id.* at 25.[4]

Secondarily, Plaintiffs argue that this interpretation of the ADA is inconsistent with the larger aims of the statute, and maintain that the Second Circuit's interpretation of the ADA in *Francis* is oddly wrong: "[I]f an employer fires an employee because the employer erroneously believes that the employee has the deadly and extremely contagious 'bongo-bongo' virus, when in fact no such virus exists, then the employee would have no recourse under the ADA or RHA." Pls.' Br. Opp. at 8–9. Or perhaps not. *See Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2204, 141 L.Ed.2d 540 (1998) (holding that "[i]n light of the immediacy with which the virus begins to damage the infected person's white blood cells and the severity of the disease, [HIV] is an impairment from the moment of infection"). The key issue is whether the covered entity perceived the plaintiff-applicant as having the kind of physical or mental impairment mandated by the terms of the statute, regardless of whether the plaintiff-applicant actually has "such an impairment." 42 U.S.C. § 12102(2). *See Francis, supra*, 129 F.3d at 285 (concluding that the "as regarded" provision for defining disability requires that "the plaintiff must allege that the

4. Plaintiffs have directed the Court to other judicial authorities which, they contend, support their interpretation of "disabled" as set forth in § 12102(2)(C). The predicate condition involved in each case—mental retardation, epilepsy, and angina pectoris—constitutes a physical or mental impairment that

would substantially interfere with one or more of the plaintiff's major life activities if it did, in fact, exist. *See* 29 C.F.R. 1630.2(h)–(j). Consequently, each of these authorities is unavailing for Plaintiffs' claims under the ADA.

employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statutes").

The plaintiffs must allege, and at this stage of the proceedings must set forth specific facts which show, that Defendants' weight policy works against "such an impairment." They have done neither. According to the undisputed facts in the record here, as well as the allegations raised in the Amended Complaint, the specific disability claimed by Plaintiffs is that Defendants' regarded them as disabled because their respective weights exceeded the height-to-weight ratios prescribed by the weight policy. *See* Pls' Br. Supp. Mot. Summ. J. (Doc. No. 70) at 10. Exceeding the boundaries of Defendants' weight policy is no disability at all because the policy drew the line at figures which would exceed the maximum desirable weight of large-framed men and women plus 30% of that weight, figures that are well below the measures for morbid obesity. Joint Stip. ¶¶ 3, 4.[5] Plaintiffs assert that "[c]learly, the weight policy of the Defendant Hospitals prohibited the Plaintiffs from working in *any* position in any workforce." Pls' Br. Supp. Mot. Summ. J. at 10. Nevertheless, Plaintiffs have neither alleged nor set forth any specific facts, as they are obligated to do under Rule 56(e), which show a genuine issue for trial as to whether the weight policy operated as a wholesale exclusion from the workforce. Absent such specific facts in opposition to Defendants' motion, the Court finds that Plaintiffs have failed to show how any of the named plaintiffs-applicants or putative plaintiffs had a physical impairment that substantially limits one or more of their major life activities due to their exclusion from employment with Defendants hospitals on the basis of the weight policy. Moreover, the two additional pieces of evidence offered by Plaintiffs in response to Defendants' motion bear solely on Defendants' proffered justifications and rationale for their weight policy, and not on the nature of the impairment, if any, implicated by that policy. Pls.' Br. Opp. at 10. Such facts are immaterial to determining whether Plaintiffs are "disabled" within the meaning of the ADA.

The Court concludes that Plaintiffs have failed to set forth any specific facts which show that a genuine issue for trial remains as to whether they were "disabled" within the meaning of the ADA. Accordingly, the Court concludes that Defendants' motion for summary judgment on Counts Two and Three of the Amended Complaint should be granted. Likewise, Plaintiffs have failed to present any facts upon which a reasonable jury could conclude that they were "disabled" with respect to "being regarded as having such an impairment," § 12102(2)(C), as alleged in the Amended Complaint, and thus have failed to discharge their initial burden under Rule 56(c) to show the first element of their prima facie case. Accordingly, the Court concludes that Plaintiffs' motion for summary judgment should be denied.

II *Plaintiffs' Claim of Improper and Illegal Pre–Employment Medical Inquiry*

■ Next, Defendants have moved for summary judgment against Plaintiffs' claim that enforcing the weight policy constitutes an impermissible pre-employment medical inquiry.

Plaintiffs have not responded to Defendants' motion with respect to this issue. Instead, Plaintiffs argue that "Defendants do not assert any defense of the weight

---

5. A different case may be presented if the covered entity enforces a policy which, by its terms, prohibits only morbidly obese persons from any types of employment, and some of the applicants were denied employment because the entity "regarded them as" being morbidly obese even though they were, in fact, less overweight. Plaintiffs neither allege nor set forth any specific facts here that suggest such a distinct set of circumstances.

policy, including the defenses of business necessity and job-relatedness," and after asserting that Defendants' policy is a "blanket exclusion," that Plaintiffs are entitled to judgment as a matter of law. Pls.' Br. Opp. at 13.

Defendants primarily contend that Plaintiffs have no standing under the ADA to recover on this basis because none of the plaintiffs-applicants is a "qualified individual with a *disability*," 42 U.S.C. §§ 12111(8), 12112(a), and thus impliedly argue that the Court need not address the issue of whether the weight policy violates the ADA in this action. Defs.' Mem. at 12–13. In support of their argument on Plaintiffs' lack of standing under the ADA, Defendants rely upon the authority of decisions by two district courts. *Armstrong v. Turner Industries, Ltd.*, 950 F.Supp. 162 (M.D.La.1996), *aff'd* 141 F.3d 554 (5th Cir.1998), and *Johnston v. Morrison, Inc.*, 849 F.Supp. 777 (N.D.Ala.1994). The Court notes, however, that the issue of whether or not a person must have a disability in order to have standing to recover on the basis of an impermissible pre-employment inquiry under § 12112(d)(2) is unsettled. *See Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir.1998). Notwithstanding Defendants' arguments, the Court need not, and does not, decide whether Plaintiffs have standing under the ADA to recover for an alleged violation of § 12112(d)(2); ultimately, the Court holds that Defendants' method of enforcing the weight policy does not violate the ADA because Defendants did not inquire about a disability.

■ The ADA prohibits a covered entity from making "inquiries of a job applicant as to whether such an applicant is an individual with a disability or as to the nature and severity of such disability." § 12112(d)(1). As Defendants have argued, "[i]nquiring about an applicant's characteristics such as height and weight is not prohibited by the ADA." Defs.' Mem. at 13. As with the general prohibition against discrimination set forth in subsection (a), the ADA prohibits a covered entity from inquiring about whether and to what extent an applicant has a *disability*, that is, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." § 12102(2)(A). Consistent with the Court's finding that Defendants' weight policy drew the line at figures which would exceed the maximum desirable weight of large-framed men and women plus 30% of that weight, figures that are well below the measures for morbid obesity, the Court finds that Defendants' weight policy inquired into an applicant's *weight*, and not into an applicant's would-be "disability," as that term is defined by the ADA. Admittedly, there may be a basis for a jury to find that Defendants' policy was "unfair, heartless, or harsh." Defs.' Mem. at 1. Nevertheless, the Court holds, as a matter of law, that no reasonable jury could find that Defendants' enforcement of the weight policy, as described by the parties' joint stipulation of undisputed facts, constitutes an unlawful inquiry as to whether an "applicant is an individual with a *disability* or as to the nature or severity of such a *disability*." § 12112(d)(2) (emphasis added).

### III  *Plaintiffs' Claims of Discrimination in Violation of Title VII*

■ Finally, Defendants have moved for summary judgment against Plaintiffs' claim that enforcing the weight policy "has a disparate impact on black applicants, particularly black female applicants," and thereby discriminates against them in violation of Title VII. Defendants argue that Plaintiffs' claims under Title VII are barred because they failed to exhaust their administrative remedies by timely filing a charge of discrimination with the EEOC. Defs.' Mem. at 14–15.

■■ An aggrieved person who alleges an unlawful employment practice under Title VII is required to file a charge of discrimination with the EEOC within 180 days following the alleged discriminatory conduct by the employer. 42 U.S.C. § 2000e–5(e)(1). The statutory provisions that require a plaintiff to file a charge of discrimination concerning the alleged discrimination by a defendant is a threshold, "jurisdictional prerequisite to bringing suit under Title VII," *Gupta v. East Texas State University*, 654 F.2d 411, 413 (5th Cir.1981),[6] aimed, in part, to ensure that the parties attempt to resolve their dispute in the first instance through methods of conciliation with the EEOC. As Plaintiffs properly indicate, the Court of Appeals for the Eleventh Circuit has squarely held that a plaintiff's "judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985). Absent some allegation of fact sufficient to put the defendant on notice of the nature and scope of the claim against it, the plaintiff is barred from asserting other types of claims in subsequent judicial proceedings that may bear some connection, however distinct, to the bare claim asserted in the EEOC charge. *See Park v. Howard University*, 71 F.3d 904 (D.C.Cir.1995), *cert. denied*, 519 U.S. 811, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996).

As the Defendants acknowledge in the joint stipulation of undisputed facts, Plaintiff Murray timely filed a charge of discrimination with the EEOC that listed race discrimination as the basis for her complaint. Specifically, Murray alleged in her EEOC charge of discrimination:

I believe that I have been discriminated against because of my race, Black, in

violation of Title VII of the Civil Rights Act of 1964, as amended, and disability in violation of the Americans with Disabilities Act of 1990.

Joint Stip. ¶ 12. In her initial Employment Discrimination Questionnaire, Murray described the her claim for race discrimination as follows:

I was told by an employee of Archbold of a white lady, who is overweight, that was hired recently as a social worker. This weight policy has supposedly been in effect for the last 3 or 4 years, but seems as if this rule is enforced when desired.

Joint Stip. ¶ 11. Defendants contend that Murray's "EEOC charge did not trigger, and could not reasonably been expected to trigger, an EEOC investigation regarding the Hospital's weight policy's alleged disparate impact on black female applicants." Defs.' Mem. at 15. Defendants argue, therefore, that because Murray's claim of race discrimination in her EEOC charge does not encompass a disparate impact claim, Plaintiffs' claim under Title VII must be dismissed. *Id.* at 16.

In response, Plaintiffs argue that their disparate impact claim is "like or related to" the claim of race discrimination as set forth in Murray's initial EEOC charge, and direct the Court to the Eleventh Circuit's decision in *Griffin, supra*. Pls.' Br. Opp. at 16. The plaintiff in that case filed an EEOC charge which alleged race discrimination "in that 'qualified *blacks were and are still being systematically excluded in* training and development and *opportunities for advancement*.'" 755 F.2d at 1522 (emphasis added). The Eleventh Circuit found that "the written examinations were an integral part of the promotional scheme," and further found that "the impact of the written tests should have been

---

6. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all of the former decisions of the former Fifth Circuit decided prior to October 1, 1981.

encompassed in a reasonable investigation of this charge of systemic discrimination in promotions." *Id.* The Eleventh Circuit further noted that the defendant's own investigative report included references to the use of written tests and the poor performances of black employees on those tests. *Id.* On these facts, the Eleventh Circuit held that the allegations in the complaint which challenged the defendant's use of written tests in awarding promotions as a form of unlawful race discrimination was fairly included within the scope of the EEOC charge. *Id.*

■ Plaintiffs contend that "the weight policy has a particularly significant impact on black female applicants," and broadly argue:

> To deny the Plaintiff class the opportunity to litigate the full range of discriminatory practices triggered by the weight policy would create tremendous judicial inefficiency, ignore the remedial nature of Title VII, and violate the 'like or related' doctrine.

Pls.' Br. Opp. at 16. Plaintiffs are correct to argue that an aggrieved party need not use any particular terms to describe her claim of discrimination or identify the legal theory underlying her claim in her EEOC charge. Still, the "like or related" doctrine interpreting the scope of the administrative prerequisites to suit under Title VII does require an aggrieved party to allege facts that fairly notify the defendant of the nature of the claim of discrimination.

As noted above, Murray summarily charged race discrimination in violation of

Title VII against Defendants' hospital. Her initial EEOC charge offered few facts, generally referring to the weight policy as it applied to her. And unlike the plaintiff in *Griffin, supra,* Murray did not suggest that other black applicants may be excluded from employment because of the criteria in that policy. Indeed, in the questionnaire she first filed with the EEOC, Murray framed her race discrimination claim in terms of her understanding that Defendants selectively applied the weight policy to black applicants, rather than white applicants. As Plaintiffs explain: "Ms. Murray more than adequately put Defendants on notice as to the facts giving rise to *her* claims, and the general nature of *those claims.*" *Id.* (emphasis added). Liberally construing her claim of race discrimination in her EEOC charge, the Court cannot discern any allegations of fact which may indicate that Murray charged that Defendants discriminated against black applicants more generally or systematically by enforcing the weight policy. Furthermore, the Court finds that Plaintiffs have failed to set forth any evidence permissible under Rule 56 that may lend support to their argument that a reasonable investigation of Murray's charge of discrimination would encompass an analysis of the potential impact of Defendants' enforcement of the weight policy upon black applicants, particularly black female applicants.[7] On the contrary, the undisputed facts in the record show that the EEOC investigated her charge of race discrimination only with respect to her application for employment, rather than with respect to the potentially disparate impact the weight policy may have upon black

---

7. In their own motion for summary judgment and response to Defendants' motion, Plaintiffs contend that their claim that the weight policy is an unlawful employment practice because it causes a disparate impact on the basis of race and sex is supported by epidemiological and demographic studies published by the U.S. Centers for Disease Controls. Notwithstanding their claims concerning the relevancy of data contained in such studies, none of the facts that may emerge from these exhibits are tendered in an admissible form, as required by Rule 56. More fundamentally, Plaintiffs have not set forth any evidence which shows that a reasonable investigation of the allegations contained in Murray's EEOC charge would have led to an analysis of Defendants' weight policy in light of these asserted demographic figures.

applicants. After careful review of the material facts in the record, the Court concludes that Murray's charge of Defendants' alleged racially selective application of the weight policy is not sufficiently like or related to Plaintiffs' allegation in the Amended Complaint that the weight policy causes a disparate impact upon applicants on the basis of their race and/or sex.

Finally, the undisputed facts in the record show that Murray filed a second EEOC charge that specifically asserted a disparate impact claim on January 8, 1997. Joint Stip. ¶ 17. Her second EEOC charge was filed well beyond 180 days after the date of Defendants' allegedly discriminatory conduct, on May 17, 1995. Joint Stip. ¶ 10. After careful review of the record, the Court finds that Plaintiffs have neither alleged nor shown that any other person who may be a member of the class timely filed an EEOC charge that alleged facts sufficient to support a disparate impact claim of race or sex discrimination under Title VII. *See* Am. Compl. ¶ 48 (relying upon Murray's first EEOC Charge, filed on July 17, 1995, as the prerequisite to this class action).

Accordingly, the Court holds that Plaintiffs' claim that Defendants' weight policy constitutes an unlawful employment practice under Title VII should be dismissed for their failure to comply with the admin- istrative prerequisites to filing suit. 42 U.S.C. § 2000e–5(e)–(f).

## CONCLUSION

For all of the reasons set forth above, the Court **ORDERS AND ADJUDGES** that Defendants' Motion for Summary Judgment (Doc. No. 65) should be, and hereby is, **GRANTED.**

The Court further **ORDERS AND ADJUDGES** that Plaintiffs' Motion for Summary Judgment (Doc. No. 69) should be, and hereby is, **DENIED.**

The Court further **ORDERS AND ADJUDGES** that Defendants' Motion for Summary Judgment (Doc. No. 78) should be, and hereby is, **DENIED,** as moot.

The Court **DIRECTS** the Clerk to enter **JUDGMENT** in favor of the Defendants.

**SO ORDERED.**