**INTERSTATE GOVERNMENT CONTRACTORS, INC.,**
Plaintiff,

v.

**JOHNSON CONTROLS, INC.,** Defendant.

No. 1:97–CV–140–2 (WLS).

United States District Court,
M.D. Georgia,
Albany Division.

March 31, 1999.

David M. Cusson, Edward Scott Sell, III, Macon, GA, for Interstate General Government Contractors, Inc.

Stephen S. Goss, Albany, GA, Jeffrey B. Whitt, Sachnoff & Weaver, Ltd., Chicago, IL, for Johnson Controls, Inc.

### ORDER

SANDS, District Judge.

Plaintiff Interstate General Government Controls, Inc. ("IGGC") filed this action in the Superior Court of Dougherty County, Georgia, to recover compensatory and punitive damages against Defendant Johnson Controls, Inc., ("Johnson Controls") for alleged breach of contract, tortious interference with business relations, and fraud in connection with a federal government contract IGGC negotiated to build air conditioning systems for the United States Air Force. Johnson Controls removed to this Court. 28 U.S.C. §§ 1332, 1441.

Johnson Controls has moved for summary judgment on all of IGGC's claims,[1] chiefly on the basis that IGGC suffered no damages as a consequence of any alleged wrongdoing by Johnson Controls. After careful consideration of the record, the Court concludes that

Johnson Controls' motion for summary judgment should be granted.

### FACTUAL BACKGROUND

Resolving all reasonable doubts about the facts in favor of the non-movant plaintiff and drawing all justifiable inferences in its favor, as the Court is required to do at this stage of the proceedings, the material, relevant facts relating to IGGC's claims appear as follows:

1. IGGC's claims arise out of events concerning its contract for the maintenance and repair of the air conditioning system in Building 158 at Robins Air Force Base ("the Project"). Pl.'s Statement of Material Facts ("Pl.'s Facts") ¶ 1 (except as noted herein, citations to the record are omitted below, simply for the sake of clarity).

2. On February 4, 1992, the Air Force awarded the contract for the design of the Project to Southeastern Architects, Engineers, Planners, Inc. ("Southeastern"). Pl.'s Facts ¶ 2.

3. The Air Force did not request that the designers incorporate the Johnson Controls Metasys control system in the Project. "[I]ndeed, the project designers, based on economic reasons and compatibility issues, decided that the Metasys control system should be specified in the plans. However, for reasons unknown, the final specifications did not contain specific language designating a particular manufacturer for the control system." *Id.* ¶ 3.

4. The Robins Air Force Base contract officer, Wanda Hamrick, "did not initially believe" that the Project specifications required sole sourcing of the control components from Johnson Controls. *Id.* ¶ 5.

5. On September 9, 1992, the Air Force awarded the contract for the Project to IGGC. *Id.* ¶ 6.

---

1. IGGC has voluntarily dismissed its claim in Count One for tortious interference with business relationship. Joint Proposed Scheduling Order at 2, n. 1, and issued as the order of the Court by incorporation to the discovery and scheduling order. Order of Dec. 29, 1998.

**696**

6. That same day, IGGC received a quotation of $110,000 from Automation Specialists, Inc. ("Automation"), a potential subcontractor for the controls portion of the Project. *Id.* ¶ 7.

7. Automation was an authorized dealer of Johnson Controls components required for the Project, except for "the PEC unit which could be subcontracted out to another subcontractor." *Id.* ¶ 8.

8. Automation was able to meet the contract specifications for the Project. Based on the contract specifications, "which did not specify a manufacturer for the control subsystems," IGGC entered into contract with Automation on October 15, 1992. *Id.* ¶ 9.

9. On or about April 2, 1993, the Air Force issued a directive to use the Johnson Control Metasys subsystem components. *Id.* ¶ 10.

10. On April 14, 1993, IGGC entered into a contract with Johnson Controls for $119,600, "and although the Air Force may have seen this original contract, the Air Force made no such approval of the specific amounts which Johnson Controls overcharged IGGC and is the subject matter of this Complaint." *Id.* ¶ 12.

11. Between June and September 1993, Johnson Controls submitted four requests for payment totaling $119,600, all of which IGGC paid. *Id.* ¶ 13.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable in-

ferences in his or her favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick,* 2 F.3d at 1116 (quotations and citations omitted).

If the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. *Fitzpatrick,* 2 F.3d at 1116. The adverse party may not respond to the motion for summary judgment simply by denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). As the Supreme Court explained, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [its] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

*I Damages Arising From Alleged Fraud*

In Count Two of the Complaint, IGGC has alleged that Johnson Controls committed

acts of fraud consisting of "false representations in its payment ('draw') requests to IGGC," ¶ 15, "inflated prices of the materials it sold IGGC far in excess of the reasonable value thereof," ¶ 16, and conspiracy to defraud by "engaging in a scheme to violate federal regulations and statutes requiring full and open competition for federal procurement of materials." ¶ 18. Johnson Controls has moved for summary judgment on all of IGGC's claims of fraud.

### A. *Fraud in False Representations and Inflated Prices*

For the purposes of this motion, Johnson Controls has assumed that IGGC can show each of the requisite elements for fraud, except one: damages. Def.'s Mem.Supp.Mot. Summ.J. ("Def.'s Mem.") at 5. Johnson Controls contends that summary judgment should be entered in its favor because IGGC is unable to show that it suffered any damages from Johnson Controls' alleged wrongdoing. Specifically, Johnson Controls argues that "IGGC cannot provide any evidence of a triable issue as to any damage it suffered as a result of Johnson Controls' erroneous, inaccurate or allegedly false invoice details." *Id.* at 5.

In response, IGGC argues that its damages "may be calculated by subtracting the actual value of the materials provided by [Johnson Controls] from the falsely represented value of the materials which [Johnson Controls] certified to be true and accurate." Pl.'s Mem.Opp.Supp.J. ("Pl.'s Mem.") at 14. In support of its contention, IGGC has submitted an affidavit from Joseph A. Christiansen ("Christiansen"), who was Vice–President of IGGC at all times relevant to the matters contained in his affidavit. Christiansen states that he has learned that Johnson Controls drastically overcharged IGGC on at least one of the components it installed on the Project. Christiansen Aff. at 7.

■ In its reply brief, Johnson Controls has comprehensively objected to Christian-

sen's affidavit: "IGGC further searches for issues of fact by mischaracterizing documents and deposition testimony, and by submitting an argumentative affidavit filled with hearsay, speculation, and statements otherwise lacking in foundation." Def.'s Reply at 1. More specifically, Johnson Controls objects to Christiansen's affidavit for failing to comply with Rule 56(e) because "Mr. Christiansen refers to a number of documents and their contents, none of which were attached to the affidavit or served with it." *Id.* at 4. The Court finds that Johnson Controls' timely objection encompasses several key deficiencies in Christiansen's affidavit. *See Burnett v. Stagner Hotel Courts, Inc.*, 821 F.Supp. 678, 683, n. 2 (N.D.Ga.1993), *aff'd* 42 F.3d 645 (11th Cir.1994) (declining to consider plaintiffs' exhibit for failing to meet the requirements of Rule 56(e), after the defendant had challenged the exhibit in its reply brief); *see also Auto Drive–Away Co. of Hialeah v. ICC*, 360 F.2d 446, 448–49 (5th Cir.1966)[2] ("An affidavit that does not measure up to the standards of Rule 56(e) is subject to a timely motion to strike. In the absence of this motion or *other objection,* formal defects in the affidavit ordinarily are waived.") (emphasis added).

The Court notes that, on this point of material fact, Christiansen's affidavit does not conform to Rule 56(e), which requires opposing affidavits to be made on the basis of the personal knowledge and set forth facts as would be admissible in evidence. Joseph Christiansen's declaration is based upon information reported to him by the project superintendent of IGGC, Steven Christiansen. Furthermore, the documentary evidence upon which IGGC relies, namely, Exhibit No. 25, is included in the attachments to IGGC's answers to the mandatory interrogatories, not to an affidavit or deposition, as required under Rule 56(e).

■ Secondly, IGGC argues that it suffered damages "as a result of being subjected

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all of the former decisions of the former Fifth Circuit decided prior to October 1, 1981.

to possible criminal and civil penalties because of Johnson Controls' false representations and certifications." Pl.'s Mem. at 14. IGGC contends that "[b]ecause government contracts are the nature of IGGC's business, and because IGGC is an ongoing concern with a prior history of profits and sales figures, its business reputation, in and of itself, has value." Pl.'s Mem. at 14. The implication, left unstated in its argument, is that IGGC suffered damages that can be attributed to its diminished business reputation as a consequence of its exposure to "possible criminal and civil penalties." *Id.* at 14. IGGC has directed the Court to a line of authority under Georgia law that permits a plaintiff to recover damages even though the plaintiffs injury may be difficult to quantify. Here again, IGGC has cited to Christiansen's affidavit for the assertion of fact that Johnson Controls' "actions resulted in, at the very least, suspicions of inappropriate charges billed to the United States Air Force." *Id.*[3] This line of authority is unavailing to IGGC simply because it has not offered any specific facts, as IGGC is obligated to set forth under Rule 56(e), which may support its contention that it has been *injured,* that is, that its business reputation has suffered from the problems it endured in building the Project. Even if Christiansen could have been in a position to have personal knowledge of such "suspicions," IGGC has not offered any evidence permissible under Rule 56 which raises a genuine issue of material fact about whether the firm's business reputation has suffered as a result of its work on the Project. *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (explaining that the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material fact").

After careful review of IGGC's response to Johnson Controls' motion, the Court concludes that IGGC has failed to make a sufficient showing that a genuine issue for trial remains concerning the damages it suffered

from Johnson Controls' alleged fraud. Accordingly, the Court holds that Johnson Controls' motion for summary judgment as to this issue should be granted.

### B.  *Fraud by Virtue of Civil Conspiracy*

■ Johnson Controls has moved for summary judgment on IGGC's claim for civil conspiracy on two bases. First, Johnson Controls contends that "IGGC offers no suggestion that Johnson Controls took specific action in furtherance of an alleged conspiracy." Def.'s Mem. at 8. And second, Johnson Controls contends that "[n]o conduct by Johnson Controls caused IGGC's purported damages." *Id.* Absent these crucial elements, Johnson Controls argues that IGGC's claim for fraud committed through civil conspiracy is groundless.

In response, IGGC maintains that it alleges that Johnson Controls engaged in "a conspiracy with others in a scheme to violate federal regulations and statutes requiring full and open competition and federal procurement laws." Pl.'s Mem. at 17. In support of this allegation, IGGC cites to Christiansen's affidavit for the statement of fact that "[Johnson Controls] conspired with other components dealers in order to prevent IGGC from using any other source for the Johnson Controls materials." *Id.* The Court is unable to discern any admissible statements of fact in the cited portion of Christiansen affidavit which may support this proposition, and Christiansen's assertion that "Automation responded that it could not perform the contract under those specifications because [Johnson Controls] had revoked its authorization" is hearsay which cannot be admitted under an applicable exception. Christiansen Aff. at 6. IGGC also asserts that evidence exists which shows that the Johnson Controls' Albany Branch "conspired with other [Johnson Controls] dealers to prevent IGGC from contracting with any other entity to obtain the materials necessary to complete [the Project] for the United States Air

---

**3.**  Johnson Controls has also challenged the accuracy of this asserted point of fact in light of the

statements that appear in Christiansen's affidavit.  Def.'s Reply at 7.

Force." *Id.* Apart from its assertion, however, IGGC has not offered any admissible evidentiary materials permissible under Rule 56 which sets forth specific facts showing that these various Johnson Controls dealers engaged in such a conspiracy. Moreover, as discussed above, IGGC has failed to set forth specific facts which show the kind(s) and extent of damages, if any, it suffered as a consequence of the alleged conspiracy.

Because IGGC has failed to satisfy its obligation to show that a genuine issue for trial remains concerning the damages which allegedly resulted from Johnson Controls' fraudulent conduct, as well as the actions which constitute the conspiracy Johnson Controls engaged in to violate federal law, the Court holds that Johnson Controls' motion for summary judgment on Count Two of the Complaint should be granted.

## II  *Breach of Contract*

IGGC alleges that Johnson Controls breached its contract on the Project by virtue of its "acts in submitting false invoices to IGGC [which] are in violation of its duty to carry out the contract in good faith." Compl. ¶ 22. IGGC further alleges that Johnson Controls breached its contract by failing in its obligation to act in good faith "by causing IGGC to pay prices far in excess of the reasonable value of the goods received from [Johnson Controls]." *Id.* ¶ 23.

Johnson Controls has moved to dismiss IGGC's claim for breach of contract on two bases: First, Johnson Controls argues that IGGC's claim for breach of contract by virtue of failing its obligation to act in good faith is not actionable independent from a breach of one of the terms of the contract itself; second, Johnson Controls argues that IGGC is unable to show any evidence that it suffered any damages as a result of Johnson Controls' alleged breach of contract.

■ Leaving to one side the issue of whether IGGC has pled a cause of action simply in terms of Johnson Controls' breach of the implied covenant of good faith that accompanies the contract, IGGC's claim for breach of contract fails for lack of a sufficient showing of damages flowing from the alleged breach. Consistent with its allegations in the complaint, IGGC contends that it "has set forth sufficient evidence for a jury to conclude that [Johnson Controls] entered into and performed the contract with IGGC in bad faith by virtue of the outrageous prices charged IGGC and the United States Air Force and [Johnson Controls'] admittedly superior bargaining position." Pl.'s Mem. at 19. In support of its assertion of fact that Johnson Controls charged IGGC "outrageous prices" in performance of the work on the Project, IGGC directs the Court to consider the evidence offered in connection with its claim for fraud. As discussed above, in part I, this evidence consists of certain documents contained in the attachments to IGGC's responses to the Court's mandatory interrogatories, as well as certain statements offered by Christiansen in his affidavit. For the same reasons discussed above, in part I, none of these materials are admissible under Rule 56(e) because none of the documents have been tendered as attachments to a sworn affidavit, made on the basis of personal knowledge. Nor are Christiansen's statements pertaining to Johnson Controls' act of overcharging on one of the components installed on the Project based upon his personal knowledge. The Court finds that IGGC has not met its burden under Rule 56(e) to make a sufficient showing of evidence for "additional elements of damages, such as those for outrageous overcharges outlined in [IGGC's] fraud claim," Pl.'s Mem. at 19, that creates a genuine issue for trial as to whether it can recover damages arising from a cause of action bad faith performance of contract under Georgia law.

Because IGGC has not met its burden of showing that a genuine issue for trial remains concerning the damages which allegedly resulted from Johnson Controls' breach of contract, the Court holds that Johnson Controls' motion for summary judgment on Count Three of the Complaint should be granted.

**700**

## CONCLUSION

For all of the reasons set forth above, the Court **ORDERS AND ADJUDGES** that Defendant's Motion for Summary Judgment (Doc.No.12) should be, and hereby is, **GRANTED.**

Accordingly, the Court further **ORDERS** that **JUDGMENT** be entered in favor of the Defendant, Johnson Controls, Inc.