**Corine ZEIGLER, individually and as the parent and next friend of Kacheal Zeigler, a minor, Plaintiff,**

**v.**

**ELMORE COUNTY HEALTH CARE AUTHORITY, d/b/a Elmore Community Hospital; and Jackson Hospital and Clinic, Defendants.**

No. Civ.A. 98–T–1309–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 27, 1999.

Thomas R. Edwards, Edwards & Edwards, Wetumpka, AL, Steven F. Schmitt, Schmitt, Harper & Smith, Tallassee, AL, for plaintiffs.

Lewis Peyton Chapman, III, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, William Sidney Haynes, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, James Flynn Mozingo, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, Rachel Sanders–Cochran, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, James Eugene Williams, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Corine Zeigler claims in this lawsuit that her infant daughter, Kacheal Zeigler, was denied a medical screening examination in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), as added by § 9121(b) of the Comprehensive Omnibus Budget Reconciliation Act of 1985, 100 Stat. 164, and as amended, 42 U.S.C.A. § 1395dd, and she sues in both her individual and representative capacities. Zeigler further alleges that she and her daughter suffered the state-law tort of outrage as a result of that denial. The defendants here are the Elmore County Health Care Authority, doing business as Elmore Community Hospital, and Jackson Hospital and Clinic. This court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1331 (federal question), *see Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir.1990), and 28 U.S.C.A. § 1367 (supplemental).

The case is currently before the court on Jackson Hospital's motion for summary judgment, and, for the reasons set forth below, the motion will be granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the party seeking summary judgment has informed the court of the basis for its motion, the non-moving party must affirmatively set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

Plaintiff Corine Zeigler has testified in her deposition that on March 6, 1998, she

took her daughter to the emergency room at Elmore Community Hospital in Wetumpka, Alabama. Kacheal, who was then 20 months old, was crying, coughing, running a high fever and having difficulty breathing. Upon their arrival, Zeigler asked for treatment and was refused because of past-due medical bills. Zeigler was told that she would have to make a payment on those bills before her daughter could receive any medical attention. Ziegler then took her daughter to Baptist Medical Center in Montgomery, Alabama, where Kacheal was promptly screened, admitted and treated for a stomach virus and dehydration. Kacheal was released the next day and is, by all accounts, a healthy child today.

The defendants, by contrast, contend that the incident at Elmore Community Hospital never happened. They say that Kacheal was never presented for treatment on March 6, 1998. They never denied her any such treatment. And they never made any treatment contingent on the payment of past-due bills.

## III. DISCUSSION

### A. EMTALA Claims

EMTALA imposes, among other things, a medical screening requirement on hospitals with emergency departments. "[I]f any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C.A. § 1395dd(a). According to the Ziegler's sworn testimony, Elmore Community Hospital clearly failed to provide a medical screening examination when Zeigler brought her daughter to its emergency department. Because the plaintiff's version of events differs so markedly from

that of the defendants, a genuine issue of fact exists on the central question of the hospital's liability for the denial of a medical screening examination.

Jackson Hospital argues, however, that it is entitled to judgment as a matter of law on Ziegler's EMTALA claim because it cannot be held liable for Elmore Community Hospital's violation. At the time of the March 6 incident, Jackson Hospital and the Elmore County Health Care Authority were parties to a "management services agreement" whereby Jackson Hospital agreed to provide one of its employees to act as a management agent or administrator at Elmore Community Hospital.[1] As a result of that agreement, Jackson Hospital employee Marshall Nero was acting as the administrator of Elmore Community Hospital at the time of the March 6 incident. But Jackson Hospital does not own or operate an emergency department in Elmore County, nor does it have a license to operate a medical facility of any kind in Elmore County. And Ziegler has never been to the emergency department at Jackson Hospital which is located in Montgomery, Alabama. Ziegler is attempting to hold Jackson liable for the March 6 incident solely on the basis of its contractual relationship with Elmore Community Hospital.

EMTALA authorizes a private right of action only against the hospital that is alleged to have violated the statute. See 42 U.S.C.A. § 1395dd(d)(2)(A); cf., e.g., Baber v. Hospital Corp., 977 F.2d 872, 877 (4th Cir.1992) (holding that EMTALA limits its patients to suits against hospitals); Holcomb v. Monahan, 807 F.Supp. 1526, 1531 (M.D.Ala.1992) (Albritton, J.), aff'd in part, rev'd in part, 30 F.3d 116 (11th Cir. 1994). Here, the alleged violation is the denial of a medical screening examination. See 42 U.S.C.A. § 1395dd(a). Because Ziegler has never requested treatment at

1. Plaintiff's response to defendant Jackson Hospital and Clinic, Inc.'s motion for summary judgment, filed June 16, 1999, at exh. 5

("Management Services Agreement between Jackson Hospital and Clinic, Inc. and Elmore County Health Care Authority").

Jackson Hospital's emergency department, Jackson Hospital cannot have denied Kacheal a medical screening examination in violation of 42 U.S.C.A. § 1395dd(a), and Ziegler cannot sue Jackson Hospital directly for the alleged violation.

█ Ziegler's attempt to sue Jackson Hospital under an agency theory must also fail. Ziegler argues that the contract between Jackson Hospital and the Elmore County Health Care Authority makes Jackson Hospital an agent of the Elmore County Health Care Authority and makes all workers at Elmore Community Hospital subagents of Jackson Hospital. Ziegler then argues for vicarious liability under the general principles of agency. *See* Restatement (Second) of Agency § 362 (1958) (an agent may be held liable for the conduct of a subagent in the same way that a principal may be held liable for the conduct of an agent). But a close examination of the contract reflects that workers at Elmore Community Hospital are not subagents of Jackson Hospital at all. They are employee-agents of the Elmore County Health Care Authority.

An agency, of course, is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." Restatement (Second) of Agency § 1 (1958). A 'subagent' is "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees to be primarily responsible." Restatement (Second) of Agency § 5 (1958). The distinction between 'agent' and 'subagent' is important, because, while an appointing agent may be held liable for the actions of a 'subagent,' an appointing agent normally may be held liable for the actions of an

'inferior agent' only if negligent in making the appointment. *See* Restatement (Second) of Agency § 5 cmt. b (1958).

Jackson Hospital has agreed "to manage, administer, and operate the [Elmore County Health Care] Authority's health care facilities...." [2] Operation of the emergency room at the Elmore Community Hospital was thus within the functions undertaken by Jackson Hospital for the Elmore County Health Care Authority. The agreement makes clear, however, that the Elmore County Health Care Authority, not Jackson Hospital, was to remain primarily responsible for most workers at Elmore Community Hospital. Jackson Hospital agreed to provide the Authority with the services of an Administrator and other "Special Personnel." [3] These were to be employees of Jackson Hospital. [4] "All other operating and service personnel required for the operation of the health care facilities" were to be employees of the Elmore County Health Care Authority. [5] In other words, Jackson Hospital agreed to manage, administer and operate Elmore Community Hospital by managing the Authority's employees.

By thus agreeing to take on the responsibility of hiring, firing and otherwise managing the Authority's employees, Jackson Hospital did not agree to assume primary responsibility for them. Restatement (Second) of Agency § 5, reporter's note (1958) (observing that the power of appointment and supervisory authority are not determinative of agent/subagent relationship). Indeed, Jackson Hospital expressly disclaimed all liability for the acts and omissions of the Authority's employees, including "any violation of any applicable federal or state statute, law, rule or regulation by the Authority or by any of the Authority's employees...." [6] In light of this disclaimer, and because the agreement throughout maintains a sharp dis-

2. *Id.* ¶ 1.

3. *Id.* ¶ 5(b).

4. *Id.* ¶ 5(b).

5. *Id.* ¶ 5(b).

6. *Id.* ¶ 28.

tinction between the employees of the Elmore County Health Care Authority and those of Jackson Hospital, the court finds as a matter of law that employees of the Elmore County Health Care Authority were not 'subagents' of Jackson Hospital. Accordingly, Ziegler cannot hold Jackson liable in this case for the actions of the Authority's employees.

### B. Outrage Claims

Jackson Hospital also seeks summary judgment on Ziegler's state-law outrage claims. The court has already granted ECH's motion for summary judgment on these claims, *see Zeigler v. Elmore County Health Care Authority*, 56 F.Supp.2d 1324 (M.D.Ala.1999) (Thompson, J.), and, for the same reasons, Jackson Hospital is entitled to summary judgment as well.

## IV. CONCLUSION

For the foregoing reasons, defendant Jackson Hospital's motion for summary judgment, filed May 27, 1999, should be granted.

An appropriate judgment will be entered.