Michael HALL, L.V. Benningfield, and New Vision Foods, Inc., Plaintiffs,

v.

CARGILL, INC., Wilbur Chocolate Company, Inc., and Todd Gusek, Defendants.

No. Civ.A. CV202–156.

United States District Court, S.D. Georgia, Brunswick Division.

Aug. 11, 2005.

---

Brent J. Savage, Savage & Turner, PC, Savannah, GA, for Michael Hall.

George C. Best, Foley & Lardner, Washington, DC, for Cargill, Inc.

### ORDER

BOWEN, District Judge.

Heretofore, all of Plaintiffs' claims in the captioned matter have been dismissed either voluntarily or on motions for summary judgment. (*See* Orders of March 30, 2005 and May 24, 2005.) The only claims remaining in the case as of the May 24, 2005 Order were Defendant Cargill, Inc.'s counterclaims against Plaintiffs New Vision Foods, Inc. ("NVF") and Michael Hall for patent infringement. By letter dated June 3, 2005, Cargill informed the Court that it wished to proceed with its counterclaims and asked the Court to consider its previously filed motion for partial summary judgment related to the counterclaims. Upon consideration of the parties' briefs on this motion, the relevant law, and the record evidence, Defendant Cargill's motion for partial summary judgment is **DENIED** on the basis that it does not have standing to bring the particular counterclaim at issue in this motion.

### I. Background

As more fully detailed in this Court's prior orders, this case involves a technology called liquified gas extraction ("LGE"). Specifically, the LGE process is used to extract cocoa butter from cocoa liquor. Cargill's counterclaims in the case involve three United States patents related to LGE technology. These patents were applied for and obtained by Henry L. Franke and have been referred to as the "Franke patents" in this case. Cargill claims to be an exclusive licensee of the Franke patents in the field of cocoa and cocoa related products. (Ans. & Countercl. ¶ 139.) Cargill further claims to have the sole right to sue for patent infringement of the Franke patents. (*Id.*)

Cargill's motion for partial summary judgment seeks judgment as a matter of law with respect to its allegation that Plaintiffs infringed United States Patent No. 5,739,364 (the "364 patent"), one of the Franke patents. More specifically, Cargill contends Plaintiffs infringed Claim 16 of the 364 patent.

By way of background about the Franke patents, Franke built a liquified gas extraction test unit used to extract oil from rice bran in the late 1980's. (Joint Timeline ¶ 7, doc. no. 179 filed under seal.) Franke incorporated University Research & Marketing, Inc. ("URM") in 1989 and filed his first patent application with the United States Patent and Trademark Office (hereinafter the "USPTO") involving his LGE process. (*Id.* ¶¶ 8–9.) This application eventually matured into United States Patent No. 5,281,732 (the "732 patent"), issued on January 25, 1994 and naming Franke as the inventor of a LGE process. (*Id.* ¶ 26). On September 11, 1992, Franke incorporated Coexco, Inc. as a vehicle for licensing URM's LGE technology. (*Id.* ¶ 11.)

Franke ultimately filed two additional patent applications with the USPTO involving his LGE process. These applica-

tions resulted in the issuance of United States Patent No. 5,525,746 (the "746 patent") and United States Patent No. 5,739,-364 (the "364 patent"). These patents were issued on June 11, 1996, and April 14, 1998, respectively. (*Id.* ¶¶ 57, 104.) Franke assigned the three "Franke patents" to URM.

In an attempt to commercialize his process, Franke, through his companies Coexco and URM, signed confidentiality agreements and performed demonstrations for several food processing companies, including companies that process cocoa liquor. One of the companies contacted by Franke was Hershey Foods Corporation ("Hershey").

In September of 1993, Coexco and Hershey entered into an option agreement for LGE extraction of oil from a variety of nuts. (*Id.* ¶ 17.) Hershey prepared a "Testing Schedule" for Coexco, covering the period from September 27 to November 17, 1993. During this time period, Franke performed a series of experiments using propane and butane to extract fats and oils from a variety of materials, including the extraction of cocoa liquor using propane. (*Id.* ¶¶ 18, 20.) In December of 1993, Coexco and Hershey amended the option agreement to include cocoa. (*Id.* ¶ 23.)

In May of 1994, Hershey expressed interest in a non-exclusive license to Franke's LGE technology with an option for an exclusive license. (*Id.* ¶ 27.) On November 1, 1994, Coexco and Hershey negotiated a revised agreement, which states: "Coexco hereby grants to Hershey and its affiliates the non-exclusive right and license to utilize the [Franke] technology." (*Id.* ¶ 30.)

On February 7, 1997, Franke–Misal Technologies Group LLC (the "FMT Group") was formed. (*Id.* ¶ 91.) On May 20 of that year, URM granted the FMT Group an exclusive license to the Franke patents.[1] (*Id.* ¶ 96.) On December 17, 1999, the FMT Group granted Cargill an exclusive license to the 364 patent for use with cocoa products, hereinafter referred to as the License Agreement. (Ex. 15 to Defs.' Consol. App.) In June of 2001, however, Cargill sends a letter to Franke indicating that it is concerned about the prior Hershey license and notified Franke that it intended to escrow the royalty payments until the issue was resolved. (Joint Timeline ¶ 133.) Franke, as president of the FMT Group, responded to the Cargill letter on July 17, 2001, warning it that escrowing the payments was an anticipatory breach of the License Agreement and that the License Agreement would be terminated if Cargill did not cure the default within 30 days. (*Id.* ¶ 135.) On September 17, 2001, counsel for the FMT Group wrote to Cargill, stating in pertinent part: "The License Agreement has been terminated due to Cargill's failure to timely cure the breach outlined in Franke–Misal's notice dated July 17, 2001." (Ex. 22 to Pls.' Ex. List.)

The next letter of record, dated June 21, 2002, from the FMT Group to Cargill states: "As Cargill is aware, the License Agreement was terminated due to the anticipatory breach of Cargill and Cargill's nonresponse to and noncompliance with Franke–Misal's July 17, 2001, notice of default and demand for cure.... [T]he License Agreement terminated and Cargill lost all rights in and to the use of Franke–Misal's patents and technology." (Ex. 23 to Pls.' Ex. List.)

---

1. This exclusive license included the 364 patent though the patent application was still pending at the time.

In April and May of 2002, Plaintiff Michael Hall performed approximately 8 to 12 experimental liquified gas extractions of uncooked cocoa nibs for M & M/Mars, Inc. in Savannah, Georgia. (Joint Timeline ¶ 155.) These experiments are the subject of Cargill's patent infringement claims.

In December of 2002, Cargill and Franke apparently resolved their issues over Cargill's escrow of royalty payments under the License Agreement and signed an agreement ending the dispute, hereinafter referred to as the Settlement Agreement. (*Id.* ¶ 159.)

## II. Summary Judgment Standard

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark*, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to

withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick,* 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 133.) Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

The issue before the Court with respect to the instant motion for summary judgment is a narrow one. Cargill seeks a judgment as a matter of law that Plaintiffs infringed Claim 16 of the 364 patent when they performed experimental LGE tests for M & M/Mars, Inc. in April and May of 2002. Cargill sets forth its arguments supporting this claim in brief.

By way of response, Plaintiffs argue that Cargill does not have standing to bring this claim for two reasons: (1) Cargill did not have a license to the 364 patent during the time of Plaintiffs' purported infringement; and (2) even assuming Cargill had a license during this time, such license was not exclusive and therefore did not impart upon Cargill standing to assert an infringement claim.

Plaintiffs' standing arguments are straightforward though I need only address the first one. In examining the undisputed evidence in the case, namely the letters involving Cargill's anticipatory breach of the License Agreement and the FMT Group's termination of the same, I conclude that Cargill did not have a license to the 364 patent during the time period from August 17, 2001 until June 21, 2002. Plaintiffs' alleged infringing conduct took place during this time in April and May of 2002.

Cargill replies that the License Agreement was not terminated despite the clear language of the letters. As evidence of the non-termination, Cargill points out that Cargill and the FMT Group entered into a Settlement Agreement in December of 2002, by which the FMT Group states that it annuls and waives its Notice of Default dated July 17, 2001.

Plaintiffs take issue with the use of this Settlement Agreement as evidence because only an unsigned copy of the agreement was produced during discovery. A signed copy of the Settlement Agreement was not produced until after the close of discovery as an exhibit to a motion for summary judgment. Thus, Plaintiffs contend the Settlement Agreement is inadmissible.

It is troublesome that Cargill now seeks to rely upon an unsigned and undated document which would be of little consequence to Plaintiffs during discovery. Yet, I do not need to resolve this issue. Instead, I conclude that even upon consideration of the Settlement Agreement, Cargill does not have standing to assert a patent infringement claim because it did not have a license at the time of the infringing

conduct. At that time, Cargill's License Agreement with the FMT Group had been terminated. This is the clear import of the letters in evidence and comports with the terms of default under the License Agreement. Plaintiffs, and anyone else for that matter, could not possibly have been on notice that a License Agreement existed between Cargill and the FMT Group *at the time of the infringing conduct* because, quite simply, a License Agreement did not exist. Cargill cannot now use the Settlement Agreement to retroactively reinstate its license to the 364 patent to the detriment of the unknowing Plaintiffs. This result would contravene fundamental doctrines of contract law and equity. Thus, Plaintiffs cannot be held liable for infringement, at least not to Cargill.

In short, at the time of the alleged infringing conduct, Cargill did not hold a license to the 364 patent. Thus, it does not have standing to sue for patent infringement.

## IV. Conclusion

Upon the foregoing, Cargill's motion for partial summary judgment (doc. no. 122) is **DENIED**. Cargill's motion for a hearing on the claims construction issues in the case (doc. no. 162) is **DENIED AS MOOT**. Given the present posture of the case, the Court deems it necessary to hold a status conference in the matter. The parties are hereby directed to appear at the United States Courthouse in Brunswick, Georgia, on September 12, 2005, at a time to be noticed by the Court.